substantial right in such a way that it could not be restored.

The situation in the case at bar is entirely different. There is no finality to the order. It is interlocutory and in the power of the court, so that if the plaintiff has been deprived of a right it can be restored to him at any time either before or after the expiration of the term at which the order was made.

We are of the opinion that the order appealed from is not a judgment or final order and that the notice of appeal therefrom conferred no jurisdiction upon this court.

The motion to dismiss is, therefore, sustained.

*Appeal dismissed.*

MATTHEWS, P. J., HAMILTON and ROSS, JJ., concur.

HARTER HOLDING CO., APPELLANT AND CROSS-APPELLEE,
*v.* PERKINS ET AL., APPELLEES; McCULLOCH ET AL.,
APPELLEES AND CROSS-APPELLANTS.

(No. 1999—Decided January 5, 1942.)

*Messrs. Black, McCuskey, Souers & Arbaugh,* for appellant and cross-appellee.

*Mr. James M. Aungst* and *Mr. J. Stewart Ake,* for appellee Stanton Bowman, individually and as representative of a class.

*Mr. William S. Georges* and *Mr. Donald A. Eberly,* for appellee Odd Fellows Association of Canton.

*Mr. Frank T. Bow,* for appellee and cross-appellant Helen McCulloch.

*Mr. L. B. McMillen* and *Mr. Orrin E. Wolf,* for appellee and cross-appellant Orrin E. Wolf, et al.

Doyle, P. J.   The Geo. D. Harter Bank, a banking corporation organized under the laws of Ohio, with its principal place of business in Canton, Ohio, was "taken over" by the superintendent of banks of the state of Ohio, pursuant to a resolution of its board of directors, and under authority of the provisions of the statutes of Ohio.   This transaction occurred on October 22, 1931, and the laws in force at that time govern the proceedings.

Thereafter, a committee of persons who represented

depositors and stockholders prepared a plan for the reopening of the bank and the resumption of business. Upon submission of the plan to the creditors and stockholders, 93 per cent in number and amount of the depositors and creditors, and approximately 96.per cent of the holders of the stock, consented to its terms. At the same time the holders of about 96 per cent of the stock entered into a separate agreement in writing concerning their stockholders' liability. Subsequently this plan was amended with the consent of those who approved the original, and, as amended, was approved by the state superintendent of banks and by the bank itself.

On July 23, 1932, the bank filed, in the Court of Common Pleas of Stark county, its application for authority to resume business. An order was thereupon issued by that court requiring all persons interested (depositors, general creditors, stockholders, etc.) to appear and show cause why the amended reopening plan should not be approved and adjudged by the court as fair and equitable. After service by mail and publication upon the interested persons, the cause was heard by the court, the application was granted, and permission was given the bank to resume business under the terms and conditions of the reopening plan, which plan was specifically approved.

The authority of the Court of Common Pleas to act under the circumstances was expressly granted by Section 710-89, General Code. This section, in force at that time, permitted the state superintendent of banks to take ''possession of the business and property'' of the bank whenever it should appear that certain things therein enumerated had occurred. The section then concluded with the following words: ''Such bank may with the consent of the superintendent of banks, resume business upon such conditions as may be approved by the Court of Common Pleas in and for the county in which such bank was located.''

The reopening plan, by virtue of which the bank resumed business, in part provided that the depositors (except small depositors whose claims were paid in full) would receive, in lieu of their claims against the closed bank, certificates of deposit in the reopened bank in amounts equal to 65 per cent of their respective original claims, and would in addition thereto receive certificates of participation in amounts equal to the balances of their respective claims, in a holding company to be organized for the purpose of assisting in the liquidation of assets, and into which holding company certain of the bank's assets were to be placed.

The holding company was organized, certificates of participation were issued, and all of the assets of the bank which were not allocated to the reopened bank by the state superintendent of banks were placed as assets in the said holding company, to be administered by it for the benefit of the holders of its participating certificates. In addition to the assets allocated to the holding company, heretofore mentioned, which included notes, mortgages, real estate and other assets of a similar character, there was also received by the holding company, in compliance with the plan, most of the bank stock, endorsed in blank by the owners thereof; an assignment by the stockholders of all dividends; and a contractual obligation to be bound in an amount equal to their stockholders' superadded liability on said stock, under the conditions contained in the reopening agreement.

The following provision of the reopening plan was consented to and carried out by practically all of the stockholders:

"The present stockholders of the bank will be required to endorse their certificates in blank and deliver them to the holding company and to assign to the holding company all dividends that might hereafter be payable on the stock as security for all obligations of

the holding company, including the depositors' certificates of participation and the debentures." (The plan provided for the issuance of debentures by the holding company, the money derived therefrom to be used to purchase "assets from the bank equal to the amount thereof." The purpose of such issue was to assist in providing liquid cash assets for the bank.) "Also no dividends are to be paid to the stockholders (except through them to the holding company) until all withdrawal restrictions of the bank are removed.

"The present stockholders will also be required to sign an agreement authorizing the holding company to sell their stock should there be a shortage in the amount realized by the holding company to pay the debentures and the participation certificates in full, and if the stock is sold and sufficient funds are not realized therefrom for that purpose, then after the statutory period elapses within which the selling stockholders could become subject to a legal assessment for stockholders' liability, they will be required to pay into the holding company, each for himself and not one for another, a sum equal to the face value of the present stockholdings of each, or as much thereof as may be necessary."

Since the reopening of the bank in 1932 and the organization of the holding company, the certificates of deposit in the bank have either been paid in full or released from the payment restrictions which were originally imposed. Likewise, the assets of the holding company have been partially liquidated (except those assets in the nature of the bank stock holdings), and from the proceeds of this liquidation all of the debentures have been paid, and three separate dividends have been paid to the holders of the certificates of participation. Two of the dividends were for 10 per cent, and one was for 20 per cent, of the amount unpaid on the certificates of participation at the respective dates of declaration.

In December, 1940, the holding company had in its hands for liquidation three different classes of assets:

"1.   Notes, mortgages, real estate, and miscellaneous assets similar in character;

"2.   The shares of stock of The Geo. D. Harter Bank which were pledged to it under the stockholders' agreement; and

"3.   The contracts of the stockholders of The Geo. D. Harter Bank to pay, if necessary, an amount equal to their original capital holdings in the Harter Bank."

On the 12th day of December, 1940, the Harter Holding Co.—heretofore designated the holding company—received a written offer of purchase from McDonald-Coolidge & Co., of Cleveland, Ohio, for all of the holding company's "assets and property of every kind and description * * * except said cash on hand and on deposit * * * and except said bank shares and any rights * * * in connection therewith and except said stockholders' liability contracts," for the price of $401,250.

This offer to purchase, however, was conditioned upon the acceptance of a further offer made by the same concern to procure offers from other parties (the procurement and performance of which offers were guaranteed by the said McDonald-Coolidge & Co.) and (1) to pay the sum of $727,500 in full payment for all the shares of stock of The Geo. D. Harter Bank and the right to receive dividends thereon and all other rights appurtenant thereto, and (2) the said purchase to constitute a full compromise, settlement, satisfaction and discharge of the liability of all stockholders and all other persons to the Harter Holding Co. upon its liability contracts.

The proposals were made upon the further condition that "prior to the delivery of said shares of The Geo. D. Harter Bank to the subscribers * * *, said The Geo. D. Harter Bank, by proper corporate action, shall in-

crease its capital to $600,000 and shall issue in exchange for each share of its presently outstanding capital stock three (3) shares of new capital stock having a par value of $20 per share," and further that no dividend or dividends shall be declared or paid by the said bank upon its capital stock prior to the delivery of such capital stock to the said subscribers unless consented to by McDonald-Coolidge & Co.

As a further and last condition of the proposal, the judgment of a court of competent jurisdiction was required to be obtained and the term of appeal required to have elapsed, which judgment should determine that the Harter Holding Co. has the right and power to enter into and consummate the terms of the proposal, and which court will further declare that the transaction proposed by the offer is fair and reasonable and that, if consummated, the entire transaction is final and binding upon all of the parties and classes of persons who entered into the original agreement for the reopening of the bank and the organizing of the Harter Holding Co.

Subsequent to the receipt of the proposal of sale, the Harter Holding Co. filed its petition in the Court of Common Pleas of Stark county and asked for an adjudication of the respective rights, powers, privileges and duties of itself, the various stockholders, and the certificate of participation holders, with respect to the terms of the reopening plan, the stockholders' agreements, and the prior proceedings of the Common Pleas Court in the reopening case. The petition further prayed that the court adjudge and declare the respective rights, powers, privileges and duties of the various parties with respect to the offer of purchase, and that the court further decree that the offer was just, fair and reasonable; that it be approved; that, if approved and accepted by the holding company and consum-

mated according to its terms, it be final and binding upon all parties.

Summons was served upon various stockholders and participation certificate holders individually and as representatives of their respective classes. In addition, every stockholder and participation certificate holder was notified by mail, as well as by newspaper publication, of the pendency of the action and the prayer of the petition.

Answers and cross-petitions were filed by various parties.

One Stanton Bowman answered and cross-petitioned. He appeared on behalf of himself as a certificate holder and on behalf of other certificate holders as a representative class. His pleading averred that a *bona fide* dispute existed between the Harter Holding Co. and the holders of participating certificates concerning their respective rights under the reopening plan, prayed that the court refuse to make the declarations prayed for by plaintiff, and that in lieu thereof the court declare in substance that the Harter Holding Co. had the right to sell the miscellaneous assets and the stock at that time, and that it also had the right and should be compelled to assert the stockholders' contractual liability, rather than settle, compromise and discharge the same.

One Helen McCulloch, a stockholder and a depositor, and who, as a *stockholder,* did not consent to the original reopening plan, filed a pleading in which she denied she was bound by the terms of the reopening plan or by the terms of the court's decree approving it, and prayed for a declaration that the said holding company was without authority to sell, assign or transfer the shares of stock standing in her name.

One Orrin E. Wolf, individually and as executor of the estate of Mary Louise Metzler, deceased; Joseph Ebi, administrator with the will annexed of the estate

of Ada Hershey Stover, deceased; and George W. Wolf and Margaret Lieberth Wolf, all of whom were certificate holders, appeared and filed a joint answer and cross-petition. They denied the right of the Harter Holding Co. to accept the offer which it had received, and alleged that, since the capital, surplus and undivided profits of The Geo. D. Harter Bank had increased from the amount of $850,000 at the time the bank reopened to the amount of $1,311,671.25 at the time of the filing of the plaintiff's petition, the bank should declare a dividend of the entire increase, payable to the Harter Holding Co., and in turn to be distributed by it to the certificate holders. They further prayed the court to deny the declarations asked for by the Harter Holding Co., and to compel "the specific performance by" the Harter Holding Co. "and by The Geo. D. Harter Bank, and by its stockholders, of the terms and provisions of said reopening plan and agreement."

A complete recital of the various pleadings filed by the various defendants would serve no useful purpose in this opinion, and such recital will therefore not be included. However, prior to the trial of the issues raised by the pleadings hereinbefore mentioned, Orrin E. Wolf and others, as plaintiffs, commenced a separate case in the Court of Common Pleas of Stark county, in which they made The Geo. D. Harter Bank and the Harter Holding Co. parties defendant, and in which they prayed for a mandatory injunction to compel The Geo. D. Harter Bank to declare a dividend in an amount equal to the increase of its capital, surplus and reserve accounts, and to order the Harter Holding Co. to apply such dividend to the payment of its outstanding certificates of participation; and further to order the Harter Holding Co. to immediately sell the shares of stock of The Geo. D. Harter Bank which had been assigned to it; and further for an order

"specifically enforcing" the terms of the reopening plan.

Upon motion duly made by the Harter Holding Co., the two separate causes of action, hereinbefore referred to, were consolidated, and in that manner were brought to trial.

Upon the issues made by the pleadings and the evidence, the trial court specifically found that the following facts had been established:

"1. A genuine and justiciable controversy exists between the plaintiff, Harter Holding Company, and certain of the defendants, arising out of doubt and uncertainty concerning the rights, powers, privileges and status of said plaintiff, in respect of the matters alleged and mentioned in the petition of said plaintiff and other pleadings herein, affecting materially the rights and interests of all stockholders of The Geo. D. Harter Bank and all holders of certificates of participation issued by Harter Holding Company, who are found by the court to be very numerous, so that it is impracticable to bring them all before the court, and the questions involved in this action are of common and general interest to all of said stockholders as a class, and to all of said holders of certificates of participation as a class, and all of said persons have been properly sued herein, by due service of process upon representative members of said classes, individually named as defendants herein, according to law, and by due notice given to all of said stockholders and certificate holders by mail, pursuant to the former order of this court touching such notice; and the court finds that all of said persons, of both of said classes, and all parties necessary to the determination of this cause, are before this court, either by due service of process or by appearance or representation as aforesaid, and that this action has been duly and lawfully defended by representatives of both of said classes of persons,

actually appearing, pleading and defending herein, on behalf and for the benefit of all.

"2. The plaintiff, Harter Holding Company, is a corporation, organized under the laws of Ohio, possessing the general powers of a corporation for profit and numerous particular powers enumerated in its articles of incorporation as set forth in the petition herein, including the power to acquire, own, hold or dispose of, or grant interests or rights of participation in, real and personal property of any kind, and among other particularly enumerated powers, the power especially to exercise and perform all lawful powers, purposes and functions of the 'Holding Company' mentioned in the 'Plan for Reopening The Geo. D. Harter Bank,' referred to in said articles and in the petition herein, and hereinafter in these findings further mentioned.

"3. The Geo. D. Harter Bank, having been placed in charge of the superintendent of banks of the state of Ohio, for liquidation, on October 22, 1931, thereafter was reopened and resumed business, on August 24, 1932, by virtue of and pursuant to a judgment, order and decree made and entered by this court on the————day of————, 1932, in case No. 63192 in this court (entitled 'In the Matter of the Liquidation of The Geo. D. Harter Bank'), upon and pursuant to the terms and provisions of the 'Plan for Reopening The Geo. D. Harter Bank,' and amendments thereof, fully set forth in the application of said bank, filed in said case No. 63192, for authority to resume business, and referred to and approved and confirmed by this court in and by its said judgment, order and decree entered as aforesaid in case No. 63192 upon said application, and also fully set forth in the petition of the plaintiff, Harter Holding Company, in this action (case No. 81632), and the exhibits annexed to said petition and therein referred to, whereunto reference is

hereby made for the terms of said 'Plan,' and of the consents and agreements by stockholders, creditors and depositors of said The Geo. D. Harter Bank, which the court finds to be binding, according to the terms thereof, upon said The Geo. D. Harter Bank, Harter Holding Company, all stockholders of The Geo. D. Harter Bank, and all former creditors and depositors of said The Geo. D. Harter Bank who were such creditors or depositors at the close of business of said bank on October 21, 1931, and have not received full payment of their claims or deposits then due and owing to them.

"4. Pursuant to said 'Plan,' approved and confirmed by this court as aforesaid, Harter Holding Company received from said The Geo. D. Harter Bank all of the assets thereof remaining after there had been set apart and retained by said bank the amount of assets provided and required by said 'Plan,' such assets being so received by Harter Holding Company for liquidation and disposition according to the provisions of said 'Plan.' Said Harter Holding Company issued to creditors and depositors of said bank (full payment of whose claims or deposits was not provided for), certificates of participation (in the form shown by an exhibit annexed to the petition of the plaintiff in this case No. 81632), in amounts equal to thirty-five per cent of the original amounts of the respective claims and deposits of said creditors and depositors. The whole face amount of said certificates of participation originally so issued was $————. There have been paid by Harter Holding Company to holders of said certificates of participation three liquidating dividends, of ten per cent (10%), ten per cent (10%) and twenty per cent (20%), respectively of the balance of the face amount of each of said certificates upon each of said occasions remaining unpaid; and there now remains unpaid, upon said certificates, the aggregate amount of $————.

"5. In so far as the evidence adduced in this case discloses, the Harter Holding Company has been prudently managed, and the liquidation of its assets has been by it carried on, until this time, with reasonable care and judgment, in accordance with the terms, provisions and requirements of said 'Plan for Reopening The Geo. D. Harter Bank,' as amended, and the former order, judgment and decree of this court approving and confirming the same; and the evidence adduced in this cause has wholly failed to sustain any of the charges of fraud, mismanagement or negligence, or of collusion with The Geo. D. Harter Bank or its stockholders for their benefit, set forth in the answers or answers and cross-petitions of certain defendants herein, and particularly of Stanton Bowman, of Orrin E. Wolf and others joining with him, and of Odd Fellows Association of Canton; but the court finds that there has been no such fraud, mismanagement, negligence or collusion in the conduct and management of the business and affairs of Harter Holding Company.

"6. There has been no abuse by the directors of The Geo. D. Harter Bank of their discretion in respect of payment of dividends, and said directors have not unreasonably failed to declare and order payment of dividends out of the net earnings of said bank.

"7. The sales made by Harter Holding Company of property, real and personal, by it from time to time sold, including the sale of the banking buildings at Canton, Ohio, and at Louisville, Ohio, and the furniture, fixtures, screens and vaults therein, and also the Class B. shares of Canton Pioneer Realty Company and the shares of Avondale, Inc., were made with reasonable care and prudence, and at reasonable prices.

"8. The certificates of participation issued by Harter Holding Company, by their own terms and according to all the terms and provisions of the 'Plan for Reopening The Geo. D. Harter Bank,' as amended and

approved as aforesaid, are not obligations of The Geo. D. Harter Bank, and said bank is not in any manner or to any extent whatever bound to pay the same or to provide for the payment thereof.

"9. By reason of the fact that liquidation of the assets of Harter Holding Company has not been completed, and a substantial amount of said assets remains to be liquidated, and the shares of stock of The Geo. D. Harter Bank (which by the terms of said 'Plan' and the agreement of the stockholders, are to be sold by Harter Holding Company, and the proceeds thereof applied to payment of the certificates of participation, if sufficient amount is not realized therefor from the liquidation of assets prior to any assessment of said stockholders) have not been sold, no claims against stockholders of The Geo. D. Harter Bank for payment by them of the original par amounts of stock of said bank by them held have yet accrued or matured, and no such claims against said stockholders are now enforceable.

"10. The offer made by McDonald-Coolidge & Co., set forth in the petition of the plaintiff, Harter Holding Company, in this action, to purchase all the assets of said Harter Holding Company which remained unsold and undisposed of on December 12, 1940 (other than cash), for the sum of $401,250, and simultaneously to secure and provide purchasers of all the stock of The Geo. D. Harter Bank, together with a release by Harter Holding Company of all further liability of the stockholders of The Geo. D. Harter Bank to Harter Holding Company or holders of its certificates of participation, to contribute to the payment thereof, for the price of $727,500, is fair and reasonable, and the aggregate amount of $1,128,750 which would thereby be realized by Harter Holding Company *is greater than any aggregate sum that can probably be otherwise realized for said holders of certificates of participation out of the liquidation of said remaining assets,* the

sale of said shares of stock of said bank and the collection of the contractual liability of stockholders of said bank under said 'Plan;' and the court finds that *it would be to the best interest of the holders of said certificates of participation if said offer were approved and accepted.* (Italics ours.)

"11. Harter Holding Company, owning and holding its assets, including all of its rights, choses in action and receivables, for the purpose of liquidating the same for the benefit of the holders of certificates of participation by it issued as aforesaid, is found by the court to be, in effect, a trustee of said assets, rights and choses in action, upon an express trust, and therefore subject to the control and direction of this court, under the chancery jurisdiction thereof, and entitled to receive and act upon instructions given to it by this court in the exercise of its chancery powers.

"12. It is specifically provided by said 'Plan for Reopening The Geo. D. Harter Bank,' and the agreements of stockholders, depositors and creditors embodied therein, that the procedure of Harter Holding Co., in the performance of its functions under said 'Plan,' in order to realize funds for payment of the certificates of participation, shall consist of the following consecutive steps—to wit: (1) the liquidation of the assets, tangible and intangible, transferred to said Harter Holding Co. by The Geo. D. Harter Bank; (2) the sale of all the shares of stock of The Geo. D. Harter Bank (if sufficient funds shall not have been realized from the liquidation of assets); and (3) if sufficient funds shall still not have been realized for full payment of said certificates, then to collect, from the stockholders of said bank, amounts equal to the original par amounts of stock of said bank by them respectively held, or so much thereof as shall be necessary for said purpose. It is provided and intended by said 'Plan' and agreements that funds

realized from said several sources, in their successive order aforesaid, shall, after payment of the debentures, current debts and operating expenses of Harter Holding Co., be distributed to holders of said certificates of participation until the same are fully paid, or paid to the extent for which funds from said sources shall suffice.

"13. No sufficient emergency has been found by the court to exist, as shown by the evidence, to require or justify the court to instruct or authorize said Harter Holding Co. to depart or deviate from the order of procedure provided by said 'Plan' and said supporting agreements, as stated in the next preceding paragraph; although, as aforesaid, the court finds that it would be to the best interest of holders of said certificates of participation if said offer were approved and accepted.

"14. It is the true intent, meaning and effect of said 'Plan for Reopening The Geo. D. Harter Bank,' and of the depositors' and stockholders' agreements or consents supporting the same, that when Harter Holding Co. shall have liquidated its assets, and if the amount realized therefrom be less than sufficient to pay the certificates of participation in full, then Harter Holding Co. will have full power and authority to sell and to transfer, or cause, require or procure to be transferred to the purchaser or purchasers, all shares of stock of The Geo. D. Harter Bank, for the best price or prices, and upon such terms, that it shall be able, after reasonable effort and with reasonable diligence, to procure; and any such sale, which may be made in any manner that said Harter Holding Co., in the reasonable exercise of the discretion of its directors, may determine, will be an absolute sale, transferring to the purchaser or purchasers absolute ownership of said shares, with full rights to such purchaser or purchasers to receive and enjoy as his or their own, all

dividends thereafter declared and paid upon said stock, and to exercise and enjoy all other rights, powers and privileges of a shareholder or shareholders in respect of the shares of stock of said The Geo. D. Harter Bank by him or them so purchased. No such purchaser or purchasers of said stock, or of any thereof, from Harter Holding Company, having paid the purchase price therefor, will thereafter be in any manner or degree liable to said Harter Holding Company or to holders of said certificates of participation, or to any other person or persons, to pay or contribute any sums whatever for the payment of said certificates.

"Nothing herein contained, shall be construed to relieve, now or in the future, the original stockholders of The Geo. D. Harter Bank of their constitutional, statutory or contractual double liability to the depositors of The Geo. D. Harter Bank and the certificate of participation holders of the Harter Holding Company.

"15. According to the true meaning and effect of said 'Plan' and agreements, no assets of The Geo. D. Harter Bank are pledged for or in any manner liable to be subjected to or charged with the payment of any certificates of participation issued by Harter Holding Company; but if any dividends are declared by the directors of said bank upon its shares of stock before the same are sold by Harter Holding Company as aforesaid, such dividends, so previously declared, shall be paid to Harter Holding Company.

"16. It does not appear from the evidence that Harter Holding Company has in any respect failed, neglected or refused, or intends or threatens to fail, neglect or refuse, to perform and carry out the provisions of said 'Plan for Reopening The Geo. D. Harter Bank,' according to the true intent, effect and purposes thereof.

"17. The defendant Helen McCulloch agreed and

consented in writing, as a depositor, to said 'Plan for
Reopening The Geo. D. Harter Bank,' and thereafter
accepted a certificate of deposit from said bank and
a certificate of participation from Harter Holding
Company, and by such agreement, cannot now come in
a court of equity and divest herself of the obligations
imposed by that plan.

"18. * * *

"19. * * *"

Upon these facts so found, the trial court made the
following conclusions of law:

"1. The Harter Holding Co. has full right, power
and authority to sell and liquidate, either in parcels or
in bulk, the assets remaining in its possession, in such
manner, for such price or prices, upon such terms and
to such person or persons, as its directors, in the rea-
sonable exercise of their discretion, shall determine.

"2. After having so liquidated said assets, so far
as its directors shall determine to be reasonably prac-
ticable, Harter Holding Co. will have full right, power
and authority to sell, and to transfer or cause or re-
quire to be transferred to the purchaser or purchasers,
all shares of stock of The Geo. D. Harter Bank, and
such sale or sales will be conclusively binding upon all
holders of said shares and all persons claiming through
or under them.

"3. Any purchaser or purchasers of shares of
stock of The Geo. D. Harter Bank from Harter Hold-
ing Co., and the respective heirs, administrators, ex-
ecutors, successors or assigns of such purchaser or
purchasers, will acquire, through such purchase or
purchases from Harter Holding Co., complete title to
and absolute ownership of said shares, with all rights,
powers and privileges of shareholders in respect
thereof, including the right to receive and enjoy all
dividends declared after the making by Harter Holding
Co. of the sale or sales of the shares in respect whereof

any such dividends are subsequently declared and to be paid; and such purchaser or purchasers, and all subsequent holders of any of said shares acquiring title through any such purchaser, will be free from any liability to Harter Holding Co. or to any holder or holders of any certificate or certificates of participation issued by Harter Holding Co., or to any person or persons claiming through or under them, for any purpose or in any sum whatever, except only the purchase price or prices agreed by such purchaser or purchasers, respectively, to be paid to Harter Holding Co. for the shares by him or them so purchased.

"4. For the reasons stated in the 13th foregoing finding of fact, only, Harter Holding Co. does not have the right, under the literal terms of said 'Plan,' power or authority, to accept the offer of McDonald-Coolidge & Co., upon the terms thereof set forth in the petition of said Harter Holding Co. herein; nor to sell to any person its remaining assets and the shares of stock of The Geo. D. Harter Bank, together with a simultaneous release of the liability of stockholders of said bank to said Harter Holding Co. under said 'Plan for Reopening The Geo. D. Harter Bank'; nor, for the same reason, will the court authorize the same.

"5. The holders of said certificates of participation, issued by Harter Holding Co., are not creditors of The Geo. D. Harter Bank, as alleged in the amended cross-petition of the defendant Stanton Bowman; nor is said bank in any manner or degree liable for or chargeable with the payment of said certificates of participation, or any amounts on account thereof; and said Stanton Bowman is not entitled to any declaration of rights to the contrary hereof, as prayed for in his cross-petition.

"6. No liability or indebtedness of stockholders of The Geo. D. Harter Bank, to pay all or any part of

the par amounts of their holdings of stock to Harter Holding Co., or to holders of said certificates of participation, has yet accrued or matured, or become enforceable either by Harter Holding Co. or by holders of said certificates; but said liability is still contingent upon, and by said 'Plan' its accrual is postponed until the shares of stock of said bank shall have been sold; and the defendant Stanton Bowman is not entitled to any declaration of rights to the contrary hereof, as prayed for in his cross-petition.

"7.  *   *   *

"8.   The directors of The Geo. D. Harter Bank have not been guilty of any arbitrary or unreasonable conduct or abuse of discretion in refraining from declaring dividends and causing the same to be paid out of net earnings of said bank, and no cause has been shown to justify the court in controlling or overruling the judgment of said directors; and Orrin E. Wolf, plaintiff in case No. 81771 (consolidated herewith), is not entitled to any declaration of rights to the contrary hereof, nor to any order or injunction directing the declaration or payment of dividends by said bank, as prayed for in the petition of said Orrin E. Wolf in said case No. 81771.

"9.   The defendant Helen McCulloch is estopped to deny that she consented, as a stockholder, to all of the terms of the 'Plan for Reopening The Geo. D. Harter Bank,' and is also bound by the decree of this court approving and confirming said 'Plan,' and is not entitled to any of the relief prayed in her amended answer and cross-petition.

"10.   Said 'Plan for Reopening The Geo. D. Harter Bank,' and the agreements of stockholders and depositors supporting the same, as set forth in the petition of the plaintiff herein, Harter Holding Co., and the decree of this court, made and entered in case No. 63192,

are fully binding in all respects upon all stockholders of The Geo. D. Harter Bank, upon all persons who were, at the time of the resuming of business by said bank, depositors or creditors thereof, and all holders of certificates of participation issued by Harter Holding Co., and all persons claiming through or under them or any of them.

"11. Upon the pleadings and the evidence an appropriate and justiciable case is presented for a declaration of rights and status and instruction of a trustee.

"\* \* \*"

Thereupon the trial court entered its judgment, bottomed upon the foregoing recitation.

In considering first the appeal on questions of law of the Harter Holding Co., there is presented the motion of Stanton Bowman, who appears individually and in his representative capacity as a certificate of participation holder, and who moves the court to dismiss the appeal of the Harter Holding Co. for the reason that it "is and was without right, power or authority to appeal from the findings, orders and judgment of the trial court" for the reasons that the holding company "is a trustee and fiduciary and appealed this \* \* \* cause in its official capacity; that the judgment, order and decree appealed from did not and does not affect a substantial right" of the holding company; that the holding company "is not and was not an adverse party; that it has not and cannot claim any right, title or interest in and to the relief sought," etc.

The Ohio cases cited by the applicant have been considered. They are *Binns* v. *Smith,* 26 Ohio Law Abs., 225; *In re Estate of Turpen,* 26 Ohio Law Abs., 587; and *First Natl. Bank of Cincinnati, Exr.,* v. *Rawson,* 54 Ohio App., 285, 7 N. E. (2d), 6.

The facts of these cases are so dissimilar from those of the instant case that they cannot be recognized as authority for the claims made.

Whether the action presented by the Harter Holding Co. in the Court of Common Pleas is treated as one for a declaratory judgment under authority of Section 12102-1 *et seq.*, General Code, or simply a straight action in chancery in which a trustee seeks the direction and authority of a court of equity in respect to its duty under the provisions of a trust instrument, the jurisdiction of the Court of Common Pleas to hear and determine such action cannot be successfully challenged. Nor can the right of the trustee to appeal from the judgment of the Court of Common Pleas be successfully challenged when it appears, as it does in this case, that the judgment from which the appeal is taken is adverse to the beneficial interests of the *cestuis que trustent*.

"A trustee of property under a will, deed, or otherwise has such an interest or concern in a judgment, order, or decree affecting the interest of his *cestuis que trust* as entitles him to appeal * * * to protect or recover the trust property or estate. * * * He may appeal * * * in his representative capacity in any case in which the question of the increase or diminution of the whole fund is involved and the increase or diminution would inure to the benefit or loss of all the creditors, although he cannot appeal in a contest of creditors among themselves * * *." 4 Corpus Juris Secundum, Appeal and Error, Section 204a.

The voluminous record in this case has been carefully scrutinized, and the members of this court are of the opinion that the findings of fact made by the trial court are not manifestly against the weight of the evidence, with the single exception of finding No. 13, in which finding the court concluded that no "sufficient" emergency existed to "require or justify" the

court to authorize a departure "from the order of procedure provided by said Plan."

Under the facts found, did the trial court err in its conclusions of law and judgment in refusing the prayer of the petition of the Harter Holding Co.? And can this court say that reasonable minds could conclude only that such an emergency does exist as would require a court of equity to authorize a departure under the circumstances of this case from the procedure for liquidation set out in the instrument creating the trust?

Rules of law applicable to testamentary trustees have been declared in a multitude of cases. Authorities treating of the duties and powers of the so-called "bank liquidating trustees" are not so numerous. The usual purpose of the creation of a trust of the latter kind is to effectuate a speedy liquidation of "frozen" assets to enable creditors to realize the greatest amount of dividend possible on their respective claims. That was the purpose of the trust involved in this controversy.

The following rules, taken from 1 Restatement of the Law of Trusts, Section 167, may be safely asserted to be the composite judgment of many of this country's greatest minds:

"(1)  The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust.

"(2)    *   *   *

"(3)   Under the circumstances stated in * * * (1), the trustee is subject to liability for failure to apply

to the court for permission to deviate from the terms of the trust, if he knew or should have known of the existence of those circumstances.''

Likewise, from 2 Restatement of the Law of Trusts, Section 336:

''If owing to circumstances not known to the settlor and not anticipated by him the continuance of the trust would defeat or substantially impair the accomplishment of the purposes of the trust, the court will direct or permit the termination of the trust.''

4 Pomeroy's Equity Jurisprudence (5 Ed.), Section 1062b, states the rule as follows:

''In the administration of a trust, circumstances sometimes bring about a situation where adherence to the directions given by its creator for its management or the application of the ordinary rules of law would defeat the very purpose which the trust is meant to accomplish. A court of chancery has jurisdiction to meet the situation by making such provision as will accomplish the purposes of the settlor. It may therefore be stated as a general rule that when, by reason of unforeseen and unanticipated circumstances, the primary purposes of the trust will fail of fulfillment if the terms of the trust are followed, a court of equity has inherent jurisdiction, by virtue of its authority to *administer* and *protect* trust estates, to authorize a deviation from the terms of the trust to accomplish the apparent ultimate purpose of the settlor. * * *'' (Italics ours.)

This rule is especially applicable to situations such as here presented, where the trust is not a testamentary trust.

The Court of Common Pleas of this state is possessed of general equity jurisdiction. *State, ex rel. Black et al., Exrs.,* v. *White, Judge,* 132 Ohio St., 58, 5

N. E. (2d), 163. Its capacity is that of a "universal trustee." Its duty is to preserve trust estates, when called upon so to do, and to protect the interests of the *cestuis*. And if it becomes necessary to deviate from the express terms of a liquidating trust instrument under circumstances of emergency, and under circumstances which were unforeseen and unanticipated, to accomplish the purposes of the settlor, and to secure for the *cestuis* the maximum benefit, it is not only the right but it is the duty of a court to so decree.

See *Seigle* v. *First National Co.*, 338 Mo., 417, 90 S. W. (2d), 776, 105 A. L. R., 181; *New Jersey Natl. B. & T. Co.* v. *Lincoln Mtge. & T. Co.*, 105 N. J. Eq., 557, 148 A., 713; *In re New*, 2 Eng. Law Rep. (Ch. Div., 1901), 534.

That emergencies exist in the affairs of practically all financial and business institutions is within the knowledge of all. The national debt is reaching one hundred billion dollars. This country is financing a world-wide war, with the probability of that figure increasing by leaps and bounds. As the writer of this opinion dictates its contents, the United States declares war upon Japan, Germany and Italy. The market for securities of the kind involved in this controversy is so narrow that it is anyone's guess as to the prospects of tomorrow.

This court has found that the finding of the trial court is correct that the amount of money offered is greater than any sum that can probably be realized by any other method of liquidation and that it would be to the best interests of the *cestuis* if the offer were accepted and the transaction consummated. We further find from the record that unforeseen and unanticipated circumstances have arisen which, unless acted upon in such a way as to gain for the *cestuis* the greatest bene-

fit, will defeat the very purpose of the existence of the trust, and it is our judgment on this point that reasonable minds could only thus conclude.

Under such facts the duty of a court of chancery is directed by the rules hereinbefore pronounced. Not that these rules are "final truths," but, when used as working hypotheses and tested in the fire of the complex social relations of the moment, their application to the instant case is impelling.

It is urged by certain of the defendants that if the plaintiff were permitted to consummate the liquidation in the manner requested, it would violate the defendants' constitutional rights and would "impair the obligation" of their contracts.

Suffice it to say that, under the terms of the agreement of liquidation, the constitutional and statutory stockholders' superadded liability was, to say the least, held in abeyance if not cancelled, and that in place thereof was substituted a separate and distinct contractual obligation, in which the stockholders agreed to pay an amount equal to their statutory liability on certain conditions.

These contracts were assets in the hands of the trustee. They were subject to all of the laws governing contracts, and as such must be treated. Under the terms of the offer of purchase, a cancellation of these contracts is provided. This is said to constitute an impairment of contract.

The effect of the release of the stockholders' liability is to make it possible for a sale of all of the assets in bulk, with the resulting economies and benefits to the participating certificate holders. It is the compromise of an asset of uncertain value. The value is uncertain for many reasons, a few of which are: the uncollectibility of some of the former stockholders; and

the ever-mounting number of deaths of the former stockholders, and the Ohio laws governing the submission of contingent claims to decedents' legal representatives (the uncertain time in the future for the presentation of such contingent claims).

Under such circumstances "it is idle to speak of the release of liability as a gift or sacrifice of valuable assets." If the trustee at this time were empowered to assert this contingent claim against the former stockholders, a court of equity would authorize the trustee to compromise and release it, if such action were for the best interest of the *cestuis*. Certainly it could not be argued that such a compromise constituted an impairment of contract. The authority of a court of equity is no less simply because a release of all former stockholders from their liability was incidental to a project to wind up the affairs of a trust for the good of all concerned.

The objectors to the request of the Harter Holding Co. further argue that, inasmuch as the contract creating the trust was approved by the Court of Common Pleas in the proceedings of 1932, its terms cannot be now varied in this proceeding.

We find no merit in that contention. This application to make the change is made in the very court which approved the contract, and the present proceedings simply invoke the court's equity power. The fact that the court, sitting as a court of law, approved the contract, is an additional reason why the same court, through its equity powers, has the capacity to do that which the trustee seeks.

Under all of the circumstances presented in this record, the members of this court are of the opinion that the trial court erred prejudicially to the rights of the trustee, The Harter Holding Co., in its judgment which denied the prayer of the plaintiff's petition.

As to the defendant Helen McCulloch, who presented the issue as to her being bound by the terms of the reopening plan.

She claimed that she neither endorsed nor deposited her stock with the plaintiff, nor signed said stockholders' agreement, and that, in the approval of the plan, the court had no jurisdiction to adjudge that, as a stockholder, she was bound by the plan; and she asked the court to declare that she was not so bound.

That issue was determined against her by the trial court, and, in this case, by her special appeal, that issue is presented to this court on both law and fact.

We find that the Common Pleas Court, in approving the plan in 1932, rendered a judgment against her on that issue, and that, at that time, said court had jurisdiction to render such judgment, and that said judgment is in full force and effect.

We further find that Helen McCulloch agreed and consented, in writing, as a depositor, to said plan for the reopening of the bank, and, as such depositor, has received the benefits of such plan; and, on said issue, we find as a matter of law that she is bound by the plan and that she is not entitled to the relief prayed for in her amended pleading.

Orrin E. Wolf appealed in his individual and representative capacities. The other persons who joined in his answer and cross-petition did not nominally join in his appeal or file a separate appeal.

As to the claims set forth in connection with his appeal, this court finds no merit therein, and specifically approves the conclusions of the trial court with reference thereto.

Epitomizing our conclusions: (1) the motion of Stanton Bowman to dismiss the appeal of the Harter Holding Co. is denied; (2) on the appeal of the Harter

Holding Co., the judgment of the trial court is reversed, and final judgment in its favor is rendered; (3) on the appeal of Helen McCulloch, a decree denying the relief prayed for may be entered; (4) the appeal of Orrin E. Wolf, etc., is determined against him, and the trial court's decision in reference thereto is approved; (5) other appeals have been dismissed by the Court of Appeals of the Fifth District, or by this court, or by the appellants themselves, and for the purposes of this decision need not be adjudicated.

An appropriate journal entry covering the appeals presented to this court and in compliance with this opinion may be prepared and recorded if approved by counsel, and, if not, the proposed entries of the parties shall be presented to this court in accordance with its rules for settlement and approval.

*Decree accordingly.*

STEVENS and WASHBURN, JJ., concur.

DOYLE, P. J., STEVENS and WASHBURN, JJ., of the Ninth Appellate District, sitting by designation in the Fifth Appellate District.