PAPIERNIK ET AL., APPELLANTS, *v.* PAPIERNIK, APPELLEE, ET AL.

[Cite as Papiernik *v.* Papiernik (1989), 45 Ohio St. 3d 337.]

(No. 88-367—Submitted March 14, 1989—Decided September 27, 1989.)

*Comstock, Springer & Wilson,*

*David C. Comstock* and *Edward N. Sobnosky,* for appellants.

*George A. Chuparkoff* and *Stephen J. Chuparkoff,* for appellee.

EVANS, J. This case presents three issues for our consideration: first, whether the remainder beneficiaries of a trust have sufficient interest in the trust to create standing to maintain an action to modify the trust when the income beneficiary has an absolute power of appointment over all assets in the trust; second, whether it is error for a court of equity to strike from the trust instrument provisions creating the position of trust advisor when continued use of trust advisors will not defeat or substantially impair the accomplishment of the trust purpose; and, third, whether it is proper for a court of equity to remove a trust advisor from office for misconduct when the trust advisor is also the sole income beneficiary of the trust and the possessor of an absolute power of appointment over all assets in the trust. We answer all three queries in the affirmative for the reasons which follow and accordingly reverse the court of appeals on the issue of standing to sue and on the issue of removal of a trust advisor from office, and reinstate the order of the trial court on both issues. We affirm the court of appeals on the issue of striking the trust provisions which create the office of trust advisor and order those provisions restored to the trust instrument.

The first issue to be resolved is that of the standing of the Papiernik brothers to bring this action for the removal of their mother, Elizabeth, as a trust advisor, and for the modification of the trust instrument by deleting the provisions which created that position.

The appellee contends that appellants must have an interest in both Trust A and Trust B if they are to maintain an action to delete the trust provisions which create the position of trust advisor since those provisions apply to both Trust A and Trust B. Appellee argues that appellants must survive Elizabeth and she must refrain from fully exercising her unlimited testamentary power of appointment before appellants will have any interest in the assets of Trust A. Therefore, appellants have a contingent remainder subject to a condition precedent which is not sufficient to give them standing to sue. Appellants contend that their interest in the assets of Trust A is a vested remainder subject to defeasance by the exercise of the power of appointment.

Before we can decide the matter of standing, we must determine the nature of the appellants' interest in Trust A.

2 Restatement of the Law, Property, Future Interests (1936) 561, Section 157, Comment *u,* defines a "remainder subject to a condition precedent" as follows:

*"Remainder subject to a condition precedent—Uncertainties.* When a limitation creates a remainder and it is not possible to point to any person and to say such person would take, if all interests including a prior right to a present interest should now end, this remainder is subject to a condition precedent. This uncertainty distinguishes this type of remainder from those vested subject to open (Comment *l*) and from those vested subject to complete defeasance (Comment *p*)."

A "vested remainder subject to a complete defeasance" is defined at 554-555, Section 157, Comment *p,* as follows:

*"Remainders vested subject to complete defeasance—Certainty of taker but uncertainty as to present interest being acquired or retained.* When a remainder is vested subject to complete

defeasance it is possible to point to a person and to say that such person would take, if all interests including a prior right to a present interest should now end. In this regard this type of remainder is like a remainder vested subject to open (compare Comment *l*). But the person thus clearly identified has no certainty of retaining such present interest as he may acquire and commonly has no certainty of ever acquiring any present interest in the affected thing. These uncertainties can be caused by any one of several factors. The remainder may be so created as to be capable of expiration before the interests including a prior right to a present interest end (see Illustration 11). The remainder may be created so as to terminate in accordance with the terms of a special or executory limitation (see Illustrations 12 and 13), *or by an exercise of a power had by some person* (see Illustration 14)." (Emphasis added.)

1 Simes & Smith, The Law of Future Interests (2 Ed. 1956) 95, Section 113, states:

"Vested Remainders Subject to Complete Defeasance.

"As indicated above, remainders may be classed as 'vested' even though they are subject to complete defeasance. The limitations which will result in the creation of this kind of remainder are very numerous, and it would be futile to try to enumerate all of them. It is, however, possible to indicate the common types of limitations which create a remainder subject to complete defeasance, and such is the purpose of this section.

"Before doing so, however, it is important to notice the content of the term 'defeasance.' It is a characteristic of all vested remainders that the holder thereof be a person in being who would be entitled to take possession of the land if all prior interests were to terminate. But, there are many occasions in which neither that person who would be entitled to take if the preceding interests were to end nor his successors will ever enjoy possession. If such a possibility exists, then the remainder is subject to complete defeasance. Similarly, there are many occasions in which the person who becomes entitled to possession and enjoyment or his successors may not be certain of continuing that possession through the termination of the estate. Here, too, the remainder is 'subject to complete defeasance.' It is thus clear that the term 'defeasance' includes both the process by which an interest expires by its own terms before it ever becomes possessory, and the process by which an interest is cut short by reason of some executory limitation or by the exercise of some power."

In *First Natl. Bank of Cincinnati v. Tenney* (1956), 165 Ohio St. 513, 60 O.O. 481, 138 N.E. 2d 15, the court stated in paragraph two of the syllabus:

"An *inter vivos* trust which reserves to the trustor the income for life and an absolute power to revoke during his lifetime, with a remainder over at his death, creates in the remainderman a vested interest subject to defeasance by the exercise of the power to revoke."

In this case we have a life tenant with an absolute power to appoint rather than a trustor with an absolute power to revoke. The exercise of either power would defease the remainder interest. We can find no difference between the position of the remaindermen in *First Natl. Bank of Cincinnati v. Tenney, supra,* and the position of the remaindermen in this case. We hold that an inter vivos trust which, on the death of the grantor, allocates substantially all the trust assets to a

marital deduction trust with the entire income therefrom payable to the surviving spouse, and which grants an unlimited testamentary power of appointment to the surviving spouse with the remainder over to the children of the grantor, creates in the remaindermen a vested interest subject to defeasance by the exercise of the power of appointment.

Thus, the interest of the remaindermen in the Papiernik Trust is a vested interest subject to complete defeasance.

In *State, ex rel. Dallman,* v. *Court of Common Pleas* (1973), 35 Ohio St. 2d 176, 178, 64 O.O. 2d 103, 104, 298 N.E. 2d 515, 516, this court held:

"It is elementary that every action shall be prosecuted in the name of the real party in interest (Civ. R. 17[A], and paragraph one of the syllabus in *Cleveland Paint & Color Co.* v. *Bauer Manufacturing Co.* [1951], 155 Ohio St. 17), and that one having no right or interest to protect ordinarily may not invoke the jurisdiction of a court. * * *" See, also, *Shealy* v. *Campbell* (1985), 20 Ohio St. 3d 23, 20 OBR 210, 485 N.E. 2d 701.

We hold that a remainderman holding a vested interest in a trust which is subject to defeasance by the exercise of a testamentary power of appointment has standing to maintain an action to modify the administrative provisions of the trust agreement.

Appellants have argued that they have standing to maintain this action whether their interest is vested or contingent. Having found the interest to be vested, it is not necessary to decide if a contingent remainder would be sufficient to create standing to maintain the action.

Next, we will consider the issue of the modification (deviation) of the trust agreement by deleting the provisions which create the position of trust advisor.

"One of the important functions of the court of equity is to assist in enforcement and administration of trusts, and hence to make such orders and decrees as will secure the carrying out of the creators' expressed intent, as to the dispositive provisions, as to the directions, as to the methods to be used, and as to the details of administration to be followed by the trustee." 6 Bogert, Trust & Trustees (2 Ed. Rev. 1980) 226, Section 561. See, also, *Sandy* v. *Mouhot* (1982), 1 Ohio St. 3d 143, 1 OBR 178, 438 N.E. 2d 117; *Tootle* v. *Tootle* (1986), 22 Ohio St. 3d 244, 22 OBR 420, 490 N.E. 2d 878. Thus, we must determine the grantor's expressed intent as it can be gathered from the trust document. With the grantor's intent in mind, we are then in a position to apply the doctrine of deviation to determine whether a modification of the trust provisions is justified.

We believe the grantor intended that this trust should provide financial support to Elizabeth during her lifetime and then pass the remaining assets, and especially the shares of Extrusion, to the children of the grantor. There is nothing in the record of this case which indicates that the continued use of trust advisors will defeat or even substantially impair this purpose. On the contrary, we conclude that trust advisors will enhance the accomplishment of the trust purpose by protecting against an unwanted sale of the closely held corporate shares by the trustee.

Shares in a closely held corporation represent a difficult investment for a trustee. The performance of the corporate management is difficult to measure, but the trustee has the ultimate responsibility for corporate management since, as shareholder, the trustee elects the corporate board of directors which in turn elects officers to manage the company. Furthermore,

the shares are not listed on any exchange so their value is difficult to determine. Only under the most unusual circumstances can a few shares of the investment be liquidated to meet a need for cash, but a listed security can be partially or completely liquidated in a matter of days. In addition, the return on closely held shares may be less than would be available in other investments because corporate earnings are sometimes used to finance corporate expansion rather than pay dividends. Also, proper diversification of the trust portfolio is difficult to achieve if the closely held shares represent a large part of the corpus of the trust.

All these problems associated with closely held shares represent inducements for a trustee to liquidate such an investment to increase income, liquidity and diversification. It is the responsibility of the trust advisors in this plan to see that such a sale does not take place on the sole decision of a corporate trustee.

The grantor's intent is clear. He added trust advisors to his estate plan to protect his corporation. It was his intention that the shares of Extrusion eventually pass to his children, some of whom are presently active in the business and shareholders of the corporation.

Deviation from the administrative provisions of a trust will be permitted by a court of equity, if owing to circumstances not known to the grantor and not anticipated by him, compliance would defeat or substantially impair the accomplishment of the purpose of the trust. See 54 Ohio Jurisprudence 2d (1962) 58, Trusts, Section 167. See, also, *Harter Holding Co.* v. *Perkins* (1942), 69 Ohio App. 203, 24 O.O. 15, 43 N.E. 2d 365, and *Craft* v. *Shroyer* (1947), 81 Ohio App. 253, 49 Ohio Law Abs. 385, 37 O.O. 77, 74 N.E. 2d 589. Furthermore, the doctrine of deviation is to be applied with caution and only to the extent necessary to accomplish the purpose of the grantor. In this case, deviation by eliminating the position of trust advisor could serve to defeat the intent of the grantor by exposing the family corporation to an untimely sale. In addition, the deviation granted goes well beyond that which is necessary to correct the circumstances which threaten the purpose of the trust. We therefore hold that it was error to delete the trust advisor provisions from the trust.

Finally we will consider the issue of the removal of both Elizabeth and Cohen from the positions of trust advisor.

The record in this case clearly establishes that Elizabeth completely misunderstood the office of trust advisor and acted irrationally, irresponsibly and unsuitably in relation to the trust.

According to the trust instrument, the trust advisors had two responsibilities which they were to exercise jointly:

1. To approve all sales, leases, exchange or investments of assets proposed by the trustee; and

2. To remove any trustee and appoint a successor trustee.

The third responsibility was intended to be exercised by a single trust advisor to replace an advisor who became incompetent, died or failed to act.

Instead of confining herself to the given duties, Elizabeth inserted herself into the management of the trust and of Extrusion to the extent that the continued existence of the trust and the corporation were threatened.

First, we observe that it is necessary, when considering this case, to keep in mind that Elizabeth has a dual relationship with the trust. She is

both a beneficiary and a trust advisor. This does not mean, however, that these two positions can be combined to give Elizabeth more authority or additional rights which she would not otherwise have. A trust advisor has only the authority given by the terms of the trust instrument and cannot exceed that authority by reason of also being the sole income beneficiary of the trust with a testamentary power of appointment over all trust assets.

Elizabeth contends that the grantor of the trust expressed his clear intention that she should have control over the assets in Trust A. We disagree. If the grantor wanted his wife to have control over the assets in Trust A, there are other arrangements which he could have used. A gift of the assets to Elizabeth without the intervention of a trustee would have given her the control which she claims. Appointment of Elizabeth as trustee would also have given her control of the assets in Trust A. However, the grantor did not use either of these arrangements. He made his wife beneficiary of Trust A, which gives her no voice in the control or management of trust assets. He also made his wife a trust advisor, but the only responsibility of this position with respect to the assets of the trust is to approve any sale, lease, exchange or investment of trust assets before the trustee may make the transaction.

Elizabeth had a duty to limit her activities with the trust and the assets held by the trust to those duties assigned to a trust advisor.

The appellants argue that the role of trust advisor is akin to that of a fiduciary, but we believe it is unnecessary to make this determination to decide this case. The conduct of Elizabeth was unsuitable whether or not she was a fiduciary by virtue of her position of trust advisor. In fact, almost all her misconduct had nothing to do with her position of trust advisor.

When a person is appointed as trust advisor in an inter vivos trust agreement but acts irrationally, irresponsibly, and unsuitably in relation to the trust, a court of equity has the power to remove that person from the position of trust advisor.

It is apparent that the trial court properly exercised its equity jurisdiction in removing Elizabeth as a trust advisor.

However, there is nothing in the record which justifies the removal of Cohen from office. The only evidence concerning his performance in office consisted of testimony that Elizabeth, in her capacity as trust advisor, mailed a letter to Cohen concerning the appointment of a successor trustee. Cohen received the letter on December 26. When he had not responded by December 29, Elizabeth declared the office held by Cohen vacant due to his failure to act and made the appointment of a successor trustee as the sole remaining trust advisor. Three days is not sufficient time to respond to a nomination as important as that of successor trustee. Cohen has not been guilty of a failure to act based on the evidence in this record nor has he been guilty of any misconduct which would justify his removal from office.

The judgment of the court of appeals is hereby reversed on the issue of standing to sue and on the issue of removal of Elizabeth as a trust advisor. The judgment of the court of appeals is hereby affirmed on the issue of deviation from the trust provisions.

We remand this cause to the trial court with instructions to restore the trust provisions which create the positions of trust advisor and to restore Cohen to his position of trust advisor with an appropriate period of time to

permit Cohen to fill the vacancy created by the removal of Elizabeth as trust advisor.

*Judgment affirmed in part, reversed in part and cause remanded.*

SWEENEY, Acting C.J., HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

JOHN R. EVANS, J., of the Third Appellate District, sitting for MOYER, C.J.