LEWIS et al., Appellants,

v.

STAR BANK, N.A., BUTLER COUNTY, et al., Appellees.

[Cite as *Lewis v. Star Bank, N.A., Butler Cty.* (1993), 90 Ohio App.3d 709.]

Court of Appeals of Ohio,
Butler County.

No. CA92–09–183.

Decided Oct. 18, 1993.

*John A. Lloyd, Jr.*, for appellants.

*Taft, Stettinius & Hollister, R. Joseph Parker* and *Michael R. Rickman*, for appellee, Star Bank, N.A., Butler County.

*Rendigs, Fry, Kiely & Dennis* and *Michael E. Maundrell*, for appellee, Parrish, Beimford, Fryman, Smith & Marcum Co., L.P.A.

MARIANNA·BROWN BETTMAN, JUDGE.

This case asks us to decide whether Star Bank, N.A., Butler County ("the Bank"), acting as a trustee, breached its fiduciary duty, and whether Parrish, Beimford, Fryman, Smith & Marcum Co., L.P.A. ("the Law Firm") committed malpractice, in failing to give pre-death tax and estate-planning advice to the settlor and the beneficiaries of a revocable *inter vivos* trust. The settlor of the trust is Mrs. Cullen. The beneficiaries of the trust, who are the plaintiffs in this action, are Cullen's daughter, Bonnie Lewis ("Lewis"), and Lewis's children, Cameron Mitrione, Jennifer Lewis and James Lewis (collectively "the Lewis children"). The Lewis children are Mrs. Cullen's grandchildren. The specific advice the Bank and the Law Firm are alleged to have failed to give was to alert the settlor and the beneficiaries to the generation-skipping tax ("GST") which would, the plaintiffs allege, have had significant tax-savings ramifications to them. Key to the plaintiffs' claim is that the Bank and the Law Firm owed this duty of pre-death tax planning advice not only to the settlor but also to them as beneficiaries. For the reasons which follow, we reject this contention and affirm the trial court's dismissal of count one of the plaintiffs' complaint against the Bank and the Law Firm.[1]

---

1. The plaintiffs have taken the instant appeal from the trial court's order dismissing count one of a six-count complaint. Since five of those counts remain pending in some capacity below, this court requested supplemental briefs from the parties on whether it had jurisdiction to hear the matter. After a thorough examination of this issue, we conclude that the judgment of the lower court is a final appealable order subject to our immediate review. R.C. 2505.02.

Plaintiffs assign two errors which essentially involve the same concepts. The gravamen of both assignments of error is that the trial court erred in dismissing count one on the grounds that there was an absence of privity among the vested beneficiaries of an *inter vivos* trust which would preclude suit against the Bank and the Law Firm. Central to plaintiffs' claims is their view that once an *inter vivos* trust was created, all of their interests vested, and they therefore were in the requisite degree of privity with the settlor to have standing to sue the Bank and the Law Firm.

Before we analyze the assignments of error, we must fully set forth the mechanics of Cullen's estate plan. In 1974, Cullen established a will and an *inter vivos* trust. The Law Firm served as her counsel in creating the will and the trust. Both were amended several times before her death. The Bank was the successor trustee to Second National Bank, which was the original trustee of the *inter vivos* trust. Although the trust was established and partially funded during Cullen's lifetime, at her death, her will provided that after distribution of personalty to Cullen's daughter Bonnie Lewis, the remainder of the estate would pour over into this 1974 trust. The Bank became the residuary beneficiary of Cullen's will. During her lifetime, Cullen had the absolute right to use up any and all of the assets in the *inter vivos* trust, which was fully revocable. At death, Cullen's residuary estate was divided in half. One half was to be held in trust for Cullen's daughter Bonnie Lewis. The other half was to be divided into equal thirds, in trust, one for Bonnie and Cameron, one for Bonnie and Jennifer, and one for Bonnie and James. Bonnie Lewis had the absolute right to use up not only her own trust, but those of her children as well.

It is interesting to note that all three of the parties to this lawsuit describe the interests of the plaintiffs differently. According to the plaintiffs, as soon as the *inter vivos* trust was created in 1974, all of them had an immediate vested interest in the trust. According to the Bank, the plaintiffs' interests are described as vested remainder equitable interests subject to defeasance. According to the Law Firm, the plaintiffs were nothing more than potential beneficiaries under Mrs. Cullen's will. The reason the parties dispute this point so strenuously becomes clear when we analyze the concepts of "vesting" and "privity" as those terms have been developed in the law. Simply stated, the law in this field has established two fundamental principles: one not in privity cannot sue; vesting gives the necessary privity to sue. *Elam v. Hyatt Legal Serv.* (1989), 44 Ohio St.3d 175, 541 N.E.2d 616; *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 512 N.E.2d 636; *Scholler v. Scholler* (1984), 10 Ohio St.3d 98, 10 OBR 426, 462 N.E.2d 158; *Noth v. Wynn* (1988), 59 Ohio App.3d 65, 571 N.E.2d 446.

■ We believe that in our analysis of the claims of privity and vesting, the status of those seeking to sue must be examined at the time the claimed mistakes occurred. In this case, Lewis and the Lewis children wish to sue the Bank and the Law Firm for mistakes claimed to have been made before Cullen's death.

■ We hold that upon Cullen's creation of a revocable *inter vivos* trust, the interest of Lewis and the Lewis children was a vested interest subject to complete defeasance. *Papiernik v. Papiernik* (1989), 45 Ohio St.3d 337, 544 N.E.2d 664, paragraph one of the syllabus; *First Natl. Bank of Cincinnati v. Tenney* (1956), 165 Ohio St. 513, 60 O.O. 481, 138 N.E.2d 15, paragraph two of the syllabus.

While Cullen was alive, and while she remained the living settlor of the *inter vivos* trust, pursuant to the terms of the trust itself, she reserved the right to change beneficiaries, to use up all the money for herself, to modify the trust or to revoke it absolutely. During her lifetime, not only was Cullen the settlor of the trust, but she was also its sole beneficiary. It is the fact that all the Lewis interests were subject to complete defeasance so long as Cullen retained these rights under the trust that is significant to our analysis. See *Papiernik v. Papiernik*, 45 Ohio St.3d at 343, 544 N.E.2d at 671. According to the Gilmer revision of Cochran's Law Lexicon, "[a] right, or estate, is vested in a person when he [or she] becomes entitled to it." As long as Cullen retained the power to revoke the trust and the other indicia of retained ownership under the trust, which she never relinquished before her death, Lewis and the Lewis children had no absolute entitlement to anything while Cullen was alive. *Papiernik v. Papiernik*, 45 Ohio St.3d at 343, 544 N.E.2d at 670. Thus, because all of their interests were subject to complete divestment while Cullen was still alive, we hold that neither Lewis nor the Lewis children were in privity with Cullen, the Bank or the Law Firm, and could not sue for mistakes arising from pre-death advice.[2]

■ We hold that the plaintiffs had no right to sue the Law Firm for pre-death advice to Cullen for another reason. While Cullen was alive, the Law Firm owed her a duty of complete and undivided loyalty. If we were to hold that the duty was owed to Cullen and to all the plaintiffs, as plaintiffs implicitly urge us to do, the Law Firm would have found itself representing divided and disparate interests, which is impermissible. Its sole obligation was one of undivided loyalty to Cullen. This is so both under Canon Five of the Code of Professional Responsibility and its related ethical consideration.

---

2. Because of our holding on privity, we need not decide whether the Bank's failure to alert the settlor and the beneficiaries to the GST would be considered a breach of fiduciary duty, as plaintiffs allege, or the impermissible unauthorized practice of law, as the Bank urges.

## CANON 5

### A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client

#### ETHICAL CONSIDERATIONS

#### EC 5-1

"The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client."

While the precise issues before us on appeal involve only the questions of the Lewis interests for pre-death advice, we continue in a limited fashion our analysis of all the Lewis interests after death because this difference in pre-death and post-death interests is crucial to understanding the basis of our holding today, and to understanding our holding in the context of Supreme Court decisions in this area of law.

At Cullen's death, Lewis's interest became fully vested, not subject to defeasance. She became the sole beneficiary of one half of the estate, held in trust for her. The other half of the estate was divided into three equal trusts for Lewis and each of her children. This vested status gave Lewis privity with the Bank and the Law Firm, but privity with the Bank in its role as executor and trustee of the Cullen estate and privity with the Law Firm as attorney for the Bank in those roles, which relate *only* to post-death matters such as errors in the *administration* of the estate and the trust. We emphasize again that we are matching the status of the person seeking relief with the time the alleged mistake was made. After Cullen's death, Lewis is in privity with the Bank and the Law Firm, as stated above, but only for matters relating to estate and trust administration.

We limit our analysis of the post-death interests in this case to that of Lewis, not the Lewis children. With respect to the five claims remaining before it, we leave it to the trial court to determine whether the Lewis children also possess the requisite degree of privity, post-death, to challenge the Bank and the Law Firm in matters of estate and trust administration while their mother is still alive. In doing so, the trial court will need to focus on the nature of the four trusts and the nature of Lewis's interest in each of her children's trusts.[3]

---

3. We note that a similar issue was reserved but not decided by the Supreme Court in *Papiernik v. Papiernik*, 45 Ohio St.3d at 343, 544 N.E.2d at 671, in regard to remaindermen under a will with a testamentary power of appointment. A similar question was also reviewed in *Pietz v. Toledo Trust Co.* (1989), 63 Ohio App.3d 17, 577 N.E.2d 1118.

Our analysis of matching the status of the person seeking relief with the time the claimed error was made is fully supported by the seminal Ohio Supreme Court cases on this subject. In *Simon v. Zipperstein* (1987), 32 Ohio St.3d 74, 512 N.E.2d 636, the court held that in the absence of fraud, collusion, or malice,[4] the beneficiary under a will could not sue the testator's lawyer for legal malpractice in the drafting of the will. The reason was that the beneficiary, the son, was not in privity with the lawyer who drafted his father's will. Under our analysis, the son had no vested rights under his father's will while his father was alive. He had only the expectancy of an inheritance. The mistake alleged was a pre-death mistake. At his father's death, the son's interest did become vested, but in that role he would have privity to sue only for errors in estate administration. That we are correct in this analysis is confirmed by the court's analysis in *Elam v. Hyatt Legal Serv.* (1989), 44 Ohio St.3d 175, 541 N.E.2d 616. *Elam,* in its syllabus, states that "a beneficiary whose interest in an estate is vested is in privity with the fiduciary of the estate, and where such privity exists the attorney for the fiduciary is not immune from liability to the vested beneficiary for damages arising from the attorney's negligent performance." The analysis of *Elam* is wholly consistent with our match-up test. The error by the attorney in *Elam* occurred as a post-death error, that is, an error in estate administration. In *Elam,* the beneficiaries had a remainder interest in real estate which passed by will. After the testator died, the attorney for the estate negligently transferred the entire fee to the life tenant. The court found the remaindermen/beneficiaries to be in privity with the lawyer and allowed the suit. The interests of these remaindermen were fully vested *after* the death of the testator and their right to sue the lawyer was for a *post-death* error. When analyzed in this way, *Simon* and *Elam* are actually consistent, and both meet our match-up-of-status test.

Thus, for all of the foregoing reasons, we hold the trial court was correct in finding that the plaintiffs had no cause of action against the Bank and the Law Firm for pre-death advice to the Settlor, and thus was correct in dismissing count one of plaintiffs' complaint.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

KLUSMEIER, P.J., and DOAN, J., concur.

HARRY T. KLUSMEIER, RUPERT A. DOAN and MARIANNA BROWN BETTMAN, JJ., of the First Appellate District, sitting by assignment.

---

4. There is no question that none of these factors is alleged in this case.