St. Louis Union Trust Company, a Corporation, as Trustee under the Will of Appolonio P. Ghio, Deceased, (Plaintiff) Respondent, v. George J. Ghio, et al., (Defendants) Respondents, Catherine Longinotti, Ida Longinotti, Florence Longinotti, and Adele Longinotti, (Defendants) Appellants. —222 S. W. (2d) 556.

St. Louis Court of Appeals. Opinion filed June 21, 1949.

Appellant's motion for rehearing or to transfer cause to Supreme Court overruled September 16, 1949.

1034

*Leahy & Leahy* and *Joseph L. Badaracco* for appellants.

*Thomas S. McPheeters, Jr.,* for respondent.

*Bryan, Cave, McPheeters & McRoberts* of counsel.

BENNICK, C.—This is a suit by St. Louis Union Trust Company as a testamentary trustee for the construction of a certain provision of the will of Appolonio P. Ghio, deceased, respecting the investment of funds derived from the sale of real estate belonging to a trust estate created by such will.

Ghio died in 1920, leaving surviving him his widow, Mary; two daughters, Lizzie and Theresa; a son, George; and a granddaughter, Celestine, the daughter of a deceased son, Gus. The widow, Mary, died in 1927. As for the daughters, Lizzie died in 1944, and Theresa in 1932. The son, George, and the granddaughter, Celestine, are still living.

It appears that in executing his will Ghio actually created two trusts, the one of personalty, and the other consisting of his real property. The trust in the personalty has terminated, and its provisions are of no importance except insofar as being a part of the whole will, they may aid in throwing light on Ghio's intention as respects the matter now in controversy.

The clause for which plaintiff seeks the court's construction is in the portion of the will setting up the trust in the real property. Specifically it is the provision that upon the sale of any such real estate, the trustee shall invest the proceeds ''in real estate, first mortgage notes or good bonds bearing interest at not less than four per cent per annum''.

Plaintiff now has some $93,000 in its hands which has been derived from the sale of real estate; and the need for the construction of the particular provision arises from the fact that under present economic conditions the trustee finds it impossible to comply with the strict language of the provision in making investments as contemplated by the will. Plaintiff's real estate loan policy dictates that no loans of trust funds shall be made in excess of 60% of the normal value of real property; and for the most part available real estate loans meeting the necessary requirements for trust purposes now bear interest at only 3 to 3½%. At the present time only a relatively few of the desirable real estate loans bear interest at the rate of 4%. Similarly good bonds for trust purposes are likewise unobtainable at a yield of 4%. On the contrary, the yield on good corporate first mortgage bonds has declined to the point where sound public utility and similar issues are selling on the average basis of 2.6%.

Generally speaking, such corporate bonds yielding a return of 4% as are now currently available are not considered suitable for trust investments, taking into account the necessity for adequate diversification and the like.

In this situation, the question perplexing the plaintiff as trustee, and for which it seeks the direction of the court, is how it shall go about performing its duty of investing the funds now in its hands which have been derived from the sale of real estate. In other words, assuming the court should find (as it did) that present economic conditions make it impossible for plaintiff to comply with the strict language of the provision of the will, shall it merely procure investments of the precise character designated by Ghio bearing interest at the highest rate obtainable though less than 4%, or shall it be authorized to purchase such other investments as may be sound and legal under the laws of this state, which will reasonably bring a return of 4%, but which will be of a different character than those designated in the will?

The evidence shows that in the considered judgment of plaintiff's trust officers, common stocks are a sound investment for trust funds at a ratio of approximately 40% stocks to 60% bonds, and that such a proper diversification between stocks and bonds tends to provide the income beneficiaries with a more or less constant purchasing power, while at the same time preserving the safety of the corpus of the estate. Faced with the dilemma indicated, plaintiff's counsel have advised it that unless otherwise directed by the court it is without authority to deviate from the strict language of the will; and consequently, finding it impossible to comply with such provision, it has made no investment of the funds whatever.

By the terms of the trust the same was to continue for the lives of Ghio's widow, three children, and granddaughter. As we have already pointed out, the son, George, and the granddaughter, Celestine, alone survive. During the widow's lifetime the entire net income was to be paid to her, and at her death 1/16 was to be paid to Celestine, and 5/16 each to Lizzie, Theresa, and George. The will bestowed on the two daughters a power of appointment as to their respective shares in the income, and on each beneficiary a power of appointment as to his or her share in the corpus.

By a codicil to his will Ghio provided that the minium amount payable annually for the sixth year after his death and thereafter should be $8,500 to George and $1,566 to Celestine. The two daughters being dead, the original provisions for them are now of unimportance; the present difficulty is in the lack of income to make the required payments to George and Celestine. In the event the net income should not be sufficient to pay such annual incomes to the beneficiaries, Ghio directed the trustee to encroach upon the corpus of the estate for such purpose, subject only to the limitation that no one of such income

beneficiaries should be entitled to encroach upon the corpus beyond his or her fractional interest in the annual income. By the time of the trial below, George and Celestine, by virtue of repeated encroachments for their benefit, had substantially exhausted their respective shares in the corpus of the estate.

Lizzie and Theresa both died testate, and by virtue of their exercise of their respective powers of appointment, 64-3/8% of the annual income is now payable to George, and 35-5/8% to Celestine, subject only to the payment of $100 annually to the Society of Jesus as provided in Theresa's will.

Theresa, by her last will, also exercised her power of appointment as to the disposition of her share in the corpus of the estate, and after directing the payment of $1,000 each to ten Catholic charitable and educational institutions, provided that the remainder of her share of the corpus should be divided into three equal parts, one to be distributed among the lineal blood descendants of George, and another among the lineal blood descendants of Celestine. In the absence of lineal blood descendants of either George or Celestine upon the termination of the trust, Theresa provided that 1/3 of such two equal parts should be distributed in equal shares among certain designated Catholic institutions, and that the remaining 2/3 of such two equal parts, together with the remaining one equal part not theretofore disposed of, should be distributed in equal shares among fourteen cousins, including Catherine, Ida, Florence, and Adele Longinotti. In other words, if both George and Celestine die without lineal blood descendants (which seems probable), then 2-1/3 of the three equal parts of the residue of Theresa's share in the corpus will go to the four Longinottis along with the other cousins similarly situated. We mention the four Longinottis specifically for the reason, as will presently appear, that they are the sole appellants from the decision of the lower court.

Having pleaded the foregoing facts in regard to the creation of the trust, the identity of the respective beneficiaries and distributees of the trust estate, and the present impossibility of making investments in accordance with the strict provision of the will, plaintiff prayed, as we have already pointed out, that the court instruct it as to whether it should only invest the funds in its hands in good mortgages, deeds of trusts, or bonds, even though such investments would yield a return of substantially less than 4%, or whether it should invest such funds, in whole or in part, in other good and legal property and securities, including debentures and sound preferred and common stocks.

As defendants to the suit, plaintiff named George and Celestine; certain Catholic institutions representative of the classes of legatees and devisees to which they belonged; and, among others, the four

Longinottis because of their interest as residuary legatees under Theresa's will.

George and Celestine filed no answer, and for this reason plaintiff has conceived it to be its duty as trustee to point out the advantages it considers inherent in broad as against restricted investment powers, and to urge upon the court that the primary standard to be observed in effectuating the terms of the trust is the welfare of George and Celestine, the surviving life beneficiaries.

A number of the Catholic institutions, answering each in its own right, as well as Joseph Renard, co-trustee under a certain trust indenture executed by Lizzie some months prior to her death, set up that they had no knowledge as to whether it was now possible for plaintiff to make investments in accordance with the strict language of the will, and prayed that if not, the court should instruct plaintiff with respect to investments in accordance with the will and under the law applicable thereto.

For their separate answer, the four Longinottis denied the impossibility of strict compliance with the provision in question, but alleged that even though strict compliance was in fact impossible, plaintiff was none the less bound by the terms of the will directing it to invest in real estate first mortgage notes and good bonds.

While the Longinottis formally denied plaintiff's assertion that under current economic conditions, 4% first mortgage notes or bonds suitable for trust investments are unavailable, it is significant that they put on no evidence to the contrary. The very most they did was to faintly suggest, during the cross-examination of two of plaintiff's officers, that local real estate firms were making loans at 4%. Plaintiff of course has never questioned the fact that such loans can be negotiated, but instead has at all times insisted that even though a real estate firm might feel free to make loans of such character on the present inflated market, a trustee would not be justified in exposing its estates to the attendant risk.

Finding from the evidence that due to economic changes which have occurred since the execution of the will it is now impossible for plaintiff to comply with the strict letter of the provision in question, and further finding that it had been Ghio's intention to provide the maximum income possible for the income beneficiaries with all proper regard for the safety of the corpus, the court authorized and directed plaintiff, pending such time as investments of the precise character specified in the will may be available, to invest in such property and securities, including debentures and common and preferred stocks, as are proper investments for trustees under the laws of this state.

The court further directed that the costs and expenses of the case, including a fee of $1,000 to plaintiff's attorneys and a fee of $100 to the attorney for defendant Society of the Helpers of the Holy Souls, should be taxed against and paid out of the corpus of the trust estate.

The Longinottis alone filed a motion for a new trial; and this being overruled, they appealed to the Supreme Court with the idea that appellate jurisdiction lay with it. The sole factor determining appellate jurisdiction is concededly the amount in dispute between the parties, which, considered in the light of the facts of the case, means the difference in the prospective income of the estate as between the broader character of investments authorized by the judgment and those distinctly specified in the will itself. Furthermore the time over which such income may accrue in the future is wholly indeterminate, depending on the lives of George and Celestine, which may conceivably end at any time. In other words the actual point is that there is no affirmative disclosure by the record that the amount in dispute, exclusive of costs, exceeds the sum of $7,500, without which this court has jurisdiction over the appeal. Const. Mo. 1945, Art. V., Secs. 3, 13. Calling attention to this situation, plaintiff filed a motion in the Supreme Court to transfer the cause to this court; and the Supreme Court, acting favorably on plaintiff's motion, ordered that the case be transferred here.

The opposing contentions of the parties reflect the nature of their respective positions in relation to the trust.

The Longinottis have a contingent interest as residuary legatees under Theresa's will. Their interest is contingent because it is dependent upon both George and Celestine dying without lineal blood descendants, which now seems likely. However the important thing is that their interest is solely in the corpus of the estate. They have no interest whatever in the income; and consequently, assuming that for plaintiff to be permitted to deviate from the strict letter of the investment provision might possibly tend in some way to jeopardize the safety of the corpus, they insist that notwithstanding present market conditions, plaintiff must nevertheless be limited in investing the funds of the estate to the precise character of investments designated in the will, bearing interest, if not at 4%, then at the highest rates obtainable. They also point out that both George and Celestine, who are the sole income beneficiaries, have practically exhausted their individual shares in the corpus, and are the only parties to benefit under the judgment of the lower court.

Plaintiff, as trustee, takes somewhat of a middle ground, and suggests that insofar as the language of the will permits, it is its duty, not only to conserve the corpus, but to obtain for the benefit of the life tenants the largest possible income consistent with the safety of the principal of the trust. In other words, it appreciates that the interests of remaindermen as against life tenants must of necessity be to some extent antagonistic; and it seeks such directions from the court as will permit it to administer the trust in such a way as to maintain a fair balance between them.

We do not understand that there is any dispute about the law, but only about its application to the facts of the case.

When the terms of a trust instrument are clear and unmistakable and capable of being carried out, there is no doubt that it is the trustee's duty to follow such explicit directions, which constitute the written expression of the trustor's intent. Coleman v. Lill, Mo. App., 191 S. W. 2d 1018. Perhaps in no respect is this duty more imperative than in the case of the investment of the trust estate. Nevertheless circumstances may and frequently do arise where, by reason of changes in conditions not foreseen by the trustor at the time of his execution of the instrument, his ultimate purpose will be defeated unless deviation is permitted; and in such an instance a court of equity has jurisdiction to grant the necessary authority. The court's jurisdiction may be invoked, not only to preserve the estate from loss or destruction, but also, as here, where literal compliance has become impossible. In this situation, where the trust instrument cannot be interpreted as permitting the trustee to do the act desired, the court does not hold that he has the power to deviate, but holding that he lacks the power, confers the same upon him. Insofar as may be the court puts itself in the trustor's place, and endeavors to authorize what it believes that he himself would have authorized if he could have anticipated the necessity for the subsequent alteration of his plan. Seigle v. First National Co., 338 Mo. 417, 431, 90 S. W. 2d 776, 781; 54 Am. Jur., Trusts, Sec. 284, 65 C. J. 683, 684; 2 Scott on Trusts, Sec. 167; 3 Bogert, Trusts and Trustees, Part 1, Secs. 561, 562.

Since Ghio set up two standards for investments (the one, that they should be in first mortgage notes or good bonds, and the other, that the securities purchased should bear interest at not less than 4%), and since both of such standards cannot now be satisfied, the question becomes one of determining which was his primary, and which his secondary, concern. In other words, was he primarily concerned with the type of securities to be purchased, and only secondarily concerned with a return of not less than 4%; or was he primarily concerned with obtaining a return of at least 4% for the income beneficiaries, and only secondarily concerned with the character of the investments to which the trustee should be restricted? The court below gave his will the latter construction, and our own consideration of the matter leads us to find that its decision was correct.

As plaintiff suggests, it required no specific direction from Ghio to authorize his trustee to invest in first mortgage notes and good bonds; and Ghio must also have been aware that it would be the trustee's duty to obtain the highest possible interest rate consistent with the safety of the principal of the estate. However, absent a specific direction in the will, there was no requirement that the trustee should in all events obtain a return of not less than 4%; and the fact that Ghio was obviously not content with the best return

which the trustee might be able to obtain, but instead set up the standard of at least 4%, indicates very persuasively that the income to be derived was a matter of primary concern.

Indeed the whole tenor of his will supports such conclusion regarding his purpose and intent.

We have already mentioned that he set up two trusts out of his residuary estate, the one in personalty, and the other in real property.

The trust in personalty was solely for the benefit of his wife, and was made to terminate at her death, whereupon, generally speaking, the corpus was to be divided between Lizzie and Theresa. His wife was named as trustee; and the significant thing is that while he gave her broad power in respect to investing any part of the principal of such estate, he nevertheless specifically cautioned her to make such investments "having in mind always the safety of the principal rather than the extent of the income to be derived". In other words, where he wished to emphasize that the safety of the principal was his primary concern, he was very clear in choosing language that could leave no doubt regarding his intention.

However when he immediately followed with the creation of a trust in his real property, he omitted any similar cautionary provision subordinating income to the preservation of the principal, but instead, while directing that a particular character of investments should be made, nevertheless imposed the qualification that they should bear interest at not less than 4%. Thus he was unquestionably concerned with the return to be derived from the trust in his estate, and the reason for his concern seems very obvious.

His chief solicitude was for his wife, and he directed that so long as she lived she should have the entire income from both the trusts.

At her death the trust in personalty was to terminate and the principal be distributed. Not so, however, with the trust in his real estate. Instead, upon the death of his wife the trust was to continue for the lives of his three children, Lizzie, Theresa, and George, and his granddaughter, Celestine; and the entire income which his wife had previously received, and which was undoubtedly quite substantial for only one person, was thenceforth to be divided among his three children and one grandchild in designated proportions. Moreover he distinctly specified that such beneficiaries should be paid minimum annual amounts progressively increasing for the first six years, to insure which he gave permission for encroachment upon the principal of the estate to the extent of each one's fractional interest in the annual income.

His primary concern in setting up the trust was that there should be an adequate income for those closest to him in point of relation. He did not name the Longinottis as beneficiaries; he only made it possible for Theresa to name them. With such underlying purpose in mind, it seems inconceivable that if he could have anticipated a

change in conditions whereby investments in first mortgage notes and bonds would not bring the minimum return upon which he had insisted, he would not have set up a more liberal investment provision. This is not to say that he did not stress and would not have stressed security, but he would no doubt have felt that security would not be appreciably sacrificed so long as the trustee was restricted to such investments as were proper under the laws of this state. This is what the lower court decreed, and its decision meets with our approval.

Finally the Longinottis complain of the action of the court in allowing plaintiff a counsel fee of $1,000 to be taxed against and paid out of the corpus of the estate. The fault they find with such action is that they and the other remaindermen, whose interest is solely in the corpus, and who gain nothing by the proceeding, have been taxed with all the costs, while George and Celestine, who alone stand to profit by the greater income for the estate, have for all practical purposes been relieved of any of the costs.

In the situation in which it found itself there would seem to be no doubt that it was plaintiff's right and duty, having due regard for the interests both of the income beneficiaries and also of the remaindermen, to seek the instruction of the court as to how investments were to be made when strict compliance with Ghio's direction became impossible. Both principal and income were subject to be affected by the character of investments that might be authorized. Plaintiff acted in good faith in instituting the proceeding, and the court below committed no error in observing the general practice that in a case such as this, the costs incurred, including a reasonable fee for the trustee's counsel, shall be charged against the trust estate. City of St. Louis v. McAlister, 302 Mo. 152, 257 S. W. 425.

The Longinottis criticize plaintiff for its failure to have invested the $93,000 in its hands so as to have realized whatever return was available in first mortgage notes and bonds at less than 4%. Suffice it to say that George and Celestine, being entitled to all the income, are the only persons with the right to complain on this account. Attention is also called to the fact that in 1932 plaintiff brought a prior suit for the determination of another question arising under the same will. That suit was irrelevant to the issue now before the court; and the fact that plaintiff's counsel fee in that case was charged against the corpus is no reason why the same procedure should not be followed in the present case, which was properly brought because of a situation subsequently arising.

It follows that the judgment rendered by the circuit court should be affirmed; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed. *Anderson, P. J.,* and *Hughes* and *McCullen, JJ.,* concur.