THE TOLEDO TRUST CO., APPELLEE, *v.* THE TOLEDO HOSPITAL ET AL., APPELLEES; MCELROY, ATTY. GENL., APPELLANT.*

(No. 5447—Decided January 2, 1962.)

*Messrs. Marshall, Melhorn, Bloch & Belt*, for plaintiff-appellee.

---

*Judgment affirmed, 174 Ohio St., 124.

426

*Mr. Henry R. Bloch* and *Messrs. Finkbeiner & Ide,* for defendant-appellees.

*Mr. Mark McElroy,* attorney general, and *Mr. John D. Barricklow,* for appellant.

Fess, J. This is an appeal on questions of law and fact, taken by the defendant Attorney General from a judgment of the Probate Court authorizing the plaintiff to deviate from the investment provisions of the testamentary trust created under the will of Jefferson D. Robinson, deceased, and authorizing and empowering the trustee, in addition to the investments authorized in accordance with the provisions of such will, to make investments in the kinds and classes of securities authorized for fiduciaries by the provisions of Sections 2109.37 and 2109.371, Revised Code.

Jefferson D. Robinson died in 1929. His will, dated January 19, 1927, and codicil, dated October 10, 1929, were duly probated and the plaintiff was thereafter appointed trustee of the testamentary trust thereunder. Such trust under decedent's will is being administered under and subject to the jurisdiction of the court. Under the will, the residue of decedent's estate is presently held and applied in perpetuity for charitable purposes. With respect to investments, the trustee is authorized to hold and retain any property owned by the decedent, but upon any sale thereof the proceeds may be invested only in federal, state or municipal bonds in accordance with the terms of Article XII of the will, which provides as follows:

"I hereby direct that all investments of capital by me directed to be made shall be in interest-bearing securities issued by the United States of America or by any governmental subdivision of the state of Ohio."

In its petition the trustee asks the court to permit it to deviate from the restrictive investment provisions, and to authorize it to invest in accordance with the Ohio statutory provisions controlling the investment of trust funds by fiduciaries. The two beneficiaries of the trust, The Toledo Hospital and The Toledo Newsboys Association, by separate answers, have joined in the prayer of the petition for relief. The Attorney General, by answer, opposes the prayer of the trustee and asks that it be denied.

The matter is now presented for trial *de novo* and judgment in this court upon the original pleadings and transcript of the docket and journal entries filed in the Probate Court and upon the testimony of the two expert witnesses in the field of analysis and investment of trust funds offered by the plaintiff trustee in support of its contention that it should be authorized to invest in a broader list of securities than those authorized by the will. Such testimony is epitomized in the trustee's brief, as follows:

"a. The trust assets are as follows:

"(i) Several pieces of real estate having an assessed value of $105,090.00;

"(ii) U. S. Government bonds of approximately $170,000.

"b. Broadly speaking, there are two classifications of investments for trust funds:

"(i) Fixed dollar securities, such as bonds or notes, from which the investor gets back a specified number of dollars at the maturity of the obligation;

"(ii) Equity investments, such as common stocks, which represents an ownership interest in the business and permits the investor to participate in any growth of the business.

"c. At the time the Robinson will was executed in 1927 and at the time of testator's death in 1929, the conservative and prudent method of protecting and conserving funds was to invest them in bonds. Equity investments such as common stocks, were regarded as highly speculative.

"d. Since that time, intervening events and changing economic factors have brought about substantial changes in investment policy—with the effect that today the prudent method of investing is to maintain a so-called 'balanced' portfolio of investments in both bonds and stocks. This has come about because:

"(i) On the one hand, various inflationary factors have caused a severe drop in the purchasing power of the dollar, so that the real, or purchasing power value of an investment in a fixed-dollar obligation (bonds) has been seriously impaired;

"(ii) On the other hand, equity investments (common stocks) have come to be regarded as sound and prudent investments due in part to the fact that regulatory legislation requires the publication of information concerning the financial facts and

business of companies whose stocks are listed on exchanges; and to the realization that such investments afford the investor an opportunity of offsetting the effect of inflation by participating in the growth and expansion in value of American industry.

"e. Some of the events and factors which have brought about changes in investment standards and made it imperative to change investment policies are:

"(i) Abandonment of the gold standard in 1933;

"(ii) Enactment of various federal statutes regulating stock market transactions and requiring publication of information concerning the financial condition and business of listed companies, i. e., Securities Act of 1933 and the Securities and Exchange Act;

"(iii) World War II and Korean War;

"(iv) Increase in public debt.

"f. The end result of the various inflationary factors and changes in economic conditions is that the purchasing power value of the dollar has decreased by approximately 50% in the last twenty years; and consequently the real value of any investment in bonds (that is, fixed-dollar obligations) has likewise decreased by 50% over the same period in real or purchasing value.

"g. There is a very real danger that the substantial impairment in real value of bonds which we have experienced in the past will continue in the future."

Although Section 2109.37, Revised Code, authorizes investments only in fixed-dollars obligations, Section 2109.371, enacted in 1953, adopts the so-called "prudent" investment principle, in that it authorizes fiduciaries to invest up to 35 per cent of trust funds in investments, including common stocks, in which a prudent man would invest. It is contended, therefore, that the 1953 statute is a recognition by the Legislature of the necessity of maintaining a balanced portfolio of investments as a so-called "hedge against inflation" in order to preserve and protect trust funds. It is observed, however, that the authorizations provided in each section are expressly limited by the prefatory clause reciting: "Except as otherwise provided by law or by the instrument creating the trust." Thus, there was no legislative intention to permit deviation from the express

provisions of the trust instrument as is provided by statute in Great Britain (15 George 5, 551, Trustee Act [1925], Chapter 19, Section 52.) and in some states.

We recognize the general equitable principle that a court of equity in proper cases will apply the "change of circumstances" doctrine to permit a trustee to administer the trust assets in a manner other than that expressed in a trust instrument. The principle is stated in 1 Restatement of Law of Trusts, Section 167, as follows:

"(1) The court will direct or permit the trustee to deviate from a term of the trust if owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust; and in such case, if necessary to carry out the purposes of the trust, the court may direct or permit the trustee to do acts which are not authorized or are forbidden by the terms of the trust."

See, also, 2 Scott, Law of Trusts (2 Ed.), 1167, Section 167; Bogert, Trusts and Trustees (2 Ed.), Sections 560-563; 2 Perry, Trusts and Trustees (7 Ed.), 1306, Section 764; 4 Pomeroy's Equity Jurisprudence (5 Ed.), 174, Section 1062b; 54 American Jurisprudence, Trusts, 224 *et seq.*, Sections 284, 285, 295, 388, 449, 450, 480; 89 Corpus Juris Secundum, Trusts, 87; 39 Ann. Cas., 996, in note appended to *Johns* v. *Montgomery*, 265 Ill., 21, 106 N. E., 497, L. R. A. 1916 B, 1073.

Ohio substantially follows the principle enunciated in Section 167 in the Restatement and 89 Corpus Juris Secundum, 87.

"In an action to construe a will wherein a testator has created a charitable trust, the court is without authority to permit the trustees to deviate from the terms of such trust unless it *clearly* appears that compliance would be illegal, impossible, or would defeat or *substantially impair* the accomplishment of the purpose of such trust." (Emphasis supplied.) *Findley et al., Trustees,* v. *City of Conneaut,* 145 Ohio St., 480.

As a corrollary it is usually held that a court should not empower a trustee to sell trust property, which he is not otherwise authorized to sell, merely because a sale would be beneficial to the trust. 2 Scott, Law of Trusts (2 Ed.), 1175, Section 167.

In support of the judgment below the trustee asserts that

a distinction is to be drawn between a situation wherein a court is asked to permit a deviation from trust provisions relating to the beneficiaries and the distribution to be made them and one wherein the court is asked to permit a deviation from merely an administrative or investment provision, citing in support thereof certain excerpts from Section 561 of Bogert, Trusts and Trustees, and *Harter Holding Co.* v. *Perkins* (1942), 69 Ohio App., 203, 225 *et seq.* We agree with the statements of the trustee that provisions setting forth the manner and amount of distributions to be made to beneficiaries represent the primary aim and purpose of the testator and that any deviation from such provisions will be rarely permitted. It is observed, however, that the distinction sought to be drawn applies to a situation wherein a conflict arises between a dispositive clause and an administrative direction, and the latter must yield to the controlling intention of the testator in the disposition of his bounty to the beneficiary. If a literal construction of the administrative provision would defeat or substantially impair the accomplishment of the dominant purpose of the trust the administrative provision must yield. The language employed in the opinion in the *Harter case* by an eminent Ohio authority on trusts (Doyle, J.) does not necessarily support the trustee's contention. The *Harter case* involved an *inter vivos* trust established incident to the liquidation of the assets of a closed bank. The court, at page 227 therein, found that unforeseen and unanticipated circumstances had arisen which, unless acted upon in such a way as to gain for the *cestuis* the greatest benefit, would defeat the very purpose of the existence of the trust.

The trustee attempts to distinguish the case of *Union Savings Bank & Trust Co.* v. *Alter,* 103 Ohio St., 188, and contends that it is not applicable to the facts presented in the instant case, because the *Alter case* deals with a dispositive clause, whereas the instant case involves merely an administrative provision.

The principal question presented in the *Alter case* for determination was whether the Court of Common Pleas had the power under the Alter will to increase the annual allowance provided thereunder to his children because of the fact that the circumstances of the children and general conditions had changed since the testator's death. This question was emphatically answered in the negative. The court did not directly pass

upon the investment provision of the will but referred to it as an indication that the trustees had not actually sold the stock of the Tool Works Company at the time the corporation was converted from a West Virginia to an Ohio corporation. The second paragraph of the syllabus reads as follows:

"The controlling object in the construction of a will is the ascertainment and declaration of the intention of the testator; and the changed value of money and property, the changed circumstances and needs of the beneficiary, do not justify a court in modifying the provisions of a will to meet the changed circumstances and conditions. The theory that the testator, had he foreseen the changed circumstances and conditions, would have provided a different and larger income is an assumption merely and is no excuse for the usurpation by the court of the right to dispose of testator's property in a way different from that by him directed."

In our opinion, that second sentence in the paragraph, notwithstanding it was applied to a dispositive clause, applies with equal cogency to Article XII of Robinson's will.

In support of its position the trustee relies primarily upon the recent decision of the Supreme Court of Minnesota in *In re Mayo* (1960), 259 Minn., 91, 105 N. W. (2d), 900, in which such court distinguished, if it did not overrule, its prior decision in *In re Trust under Will of Jones*, 221 Minn., 524, 22 N. W. (2d), 633.[1]

In the *Jones case*, it was argued that under a subsequent statutory enactment which authorized trustees to invest trust funds in corporate stocks, and because of changed economic conditions and the prospect of higher income from corporate stocks, the court should authorize the trustees to invest trust

---

[1]Additional decisions cited by plaintiff are: *Harter Holding Co.* v. *Perkins* (1942), 69 Ohio App., 203; *In re Pulitzer's Estate* (1931), 249 N. Y. Supp., 87, 139 Misc., 575; *Young* v. *Young* (1931), 255 Mich., 173, 237 N. W., 535, 77 A. L. R., 963; *Cary* v. *Cary* (1923), 309 Ill., 330, 141 N. E., 156; *Citizens Natl. Bank* v. *Morgan* (1947), 94 N. H., 284, 51 A. (2d), 841, 170 A. L. R., 1215; *John A. Creighton Home for Poor Working Girls* v. *Waltman* (1941), 140 Neb., 3, 299 N. W., 261; *Morris Community Chest* v. *Wilentz* (1939), 142 N. J. Eq., 580, 3 A. (2d), 808; *Newark Banking Co.* v. *Osborne* (1952), 19 N. J. S., 175, 88 A. (2d), 229; *St. Louis Union Trust Co.* v. *Ghio* (1949), 240 Mo. App., 1033, 222 S. W. (2d), 556.

funds in the latter. In denying both contentions, the court, at page 528 therein, stated:

"There has been no showing that authority to deviate from the terms of this trust is necessary to effectuate the ultimate intention of the testator or to *preserve the corpus of the trust.* * * * authority to deviate * * * is being sought solely with a view to increasing the income of the life tenants thereunder. * * * it would be improper for the court to substitute its judgment on a *matter of business for that of the testator* * * *."

Dr. Mayo's trust provided:

"* * * The trustees shall hold said property as a trust fund and collect the interest, income and profits therefrom as the same accrue; *manage, care for and protect said fund all in accordance with their best judgment and discretion,* invest and re-invest the same in *real estate mortgages, municipal bonds or any other form of income bearing property (but not real estate nor corporate stock)* * * *."

It is of some significance that in its opinion in the *Mayo case* the court emphasized the above italicized provisions of the trust instrument possibly by way of indicating that the settlor, by the language employed, intended to vest discretion in his trustees to preserve the corpus of the trust and only parenthetically prohibited investments in real estate and corporate stocks. Nevertheless, apparently the court went all out in holding that where a trust provides that the trustee should manage, care for and protect the fund in accordance with the trustee's best judgment and discretion, and invest in certain described property, "but not real estate nor corporate stock," but if deviation from authorized investments was not permitted, accomplishment of the dominant intention of the donor to prevent a loss of the principal of the trust would be substantially impaired because of changed conditions due to inflation since the trusts were created, to avoid such occurrence, in equity, the trustee should have the right and be authorized to deviate from the restrictions by being permitted to invest a reasonable amount of the assets of the trust in corporate stocks of good sound investment issues. Thus the court squarely held that proof of reduction in dollar value or purchasing power of the corpus of the estate as a result of inflation would permit deviation from the expressed parenthetical limitation in the will.

Dr. Mayo established the trusts on August 17, 1917, and March 29, 1919, and lived until May 26, 1939. The court apparently attached no weight to the fact that during the generation preceding the death of the settlor there had occurred a gradual but substantial impairment of the purchasing power of the dollar or the fact that the settlor lived ten years after the stock market debacle in 1929, and also during the subsequent decline in the market value of Triple A stocks during the thirties, and was apparently content to leave unchanged the prohibition against the purchase of real estate and corporate stock. Of course, it is hardly conceivable that the settlor would have foreseen the galloping inflation which occurred after World War II.

Suffice it to say here that we are not persuaded by the decision in the *Mayo case,* or other authorities relied upon by the plaintiff, to rewrite the will of Robinson under the guise of attempting to construe his presumed dominant intention to preserve the dollar value of the assets of his estate.

There is also a further consideration which impels our conclusion. An analysis of the assets prepared April 21, 1961, shows a total amount in U. S. Treasury obligations having a market value of $71,410, real estate having an assessed value of $105,090 and cash in the sum of $99,651.67 arising primarily from a recent sale of real estate. Apparently, in the exercise of its discretion, the trustee has elected to invest in low interest bearing Treasury bonds rather than the higher interest bearing bonds of municipalities and subdivisions.

When one of the expert witnesses was asked what income would be realized from the general investment in authorized common stocks under the Ohio statute, he replied:

"Offhand, I would say, correctly you could probably get a minimum of three. Maybe if you selected higher income securities which would be a good issue, so to speak, you might get three and a half or three and three-quarters, maybe four."

It is conceded that the paramount problem is an attempt to preserve the dollar value of the corpus of the estate, but consideration should also be given as to whether the small additional income to be derived from dividends outweighs the risk involved in converting a portion of the fixed income securities to equities. If we were to enter the field of attempting to construe the testator's intention, can the conclusion be reached

that even in the light of today's events the testator would have provided otherwise than he provided in 1927 when he wrote his will. Neither the financial expert witness, nor do we, have a crystal ball to forecast the future of either type of investment. During the past eight years the inflationary trend has been checked. Prophets of doom decry that in the long range inflation and the mounting public debt will result in repudiation of currency and other governmental obligations. History reveals that upon such an eventuality, real estate and other physical assets only will have value. In the light of these considerations and the speculative nature of the future, we cannot say, under the guise of construing the will, that the testator did not intend to prohibit investments in securities other than governmental bonds. We agree with the following statement of Robinson, J., in the *Alter case*, at page 203:

"In extreme cases, in England, as well as in certain jurisdictions in America, the courts, under the guise of doing what the court imagines the testator would have done had he foreseen the situation, have gone a long way toward the substitution of the will of the court for that of the testator; but no such invasion of the right of the testator has been made in Ohio and we are not convinced that the benefits to be derived from the assumption and exercise of such power by the courts would compensate for the evils which would necessarily flow in its wake."

We are not convinced that the record discloses that, owing to circumstances not known to the testator and not anticipated by him, compliance with the provisions of Article XII of his will will defeat or substantially impair the accomplishment of the purposes of the trust. In other words, the case does not present any such exigencies in the administration of the trust as to demand a departure from the language of the will in order to conserve what the trustee and the beneficiaries and the court might think a more expedient administration of the trust estate than that directed by the testator in his will. *Gaines* v. *Arkansas Bank*, 170 Ark., 679, 280 S. W., 993, 996; *Porter* v. *Porter* (Maine, 1941), 20 A. (2d), 465.

A finding and judgment is, therefore, rendered against the plaintiff and on behalf of the defendant Attorney General, the petition is dismissed, at plaintiff's costs in this court and in the

Probate Court, and the cause is remanded thereto for execution for costs.

· *Judgment accordingly.*

DEEDS and SMITH, JJ., concur.