[Cite as *Collins v. Flannery*, 2024-Ohio-5822.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christina A. Collins et al., | : | |
| Plaintiffs-Appellees, | : | |
| v. | : | No. 23AP-770 |
| | | (Prob. No. 606263A) |
| Carol A. Flannery, Individually et al., | : | |
| | | (REGULAR CALENDAR) |
| Defendants-Appellants, | : | |
| Real Property Located et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 12, 2024

**On brief:** *Metz, Bailey & McLoughlin, L.L.P., Kyle J. Stroh,* and *Josh S. Plieninger*, for plaintiffs-appellees. **Argued:** *Josh S. Plieninger*.

**On brief:** *The Law Office of Ryan Gordon, Esq., LL.M., L.L.C.,* and *Ryan A. Gordon*; *Flowers & Grube, Paul W. Flowers, Louis E. Grube,* and *Kendra Davitt*, for appellants. **Argued:** *Louis E. Grube*.

APPEAL from the Franklin County Court of Common Pleas, Probate Division

LELAND, J.

{¶ 1} This is an appeal by defendants-appellants, Carol A. Flannery, individually and as trustee of the Flannery Family Revocable Trust, from a judgment of the Franklin County Court of Common Pleas, Probate Division, overruling her objections and adopting a magistrate's decision that granted in part and denied in part appellant's motion for summary judgment and granted in part and denied in part a motion for summary judgment

filed by plaintiffs-appellees, Christina A. Collins and Heather L. MacLean (collectively "appellees").

## I. Facts and Procedural History

{¶ 2} The following background facts are taken primarily from the findings of fact set forth in the magistrate's decision, filed July 28, 2023, as well as from the record of proceedings. Appellees are "the only children of Timothy O. Flannery." (Mag.'s Decision at 2.) On March 3, 2015, Timothy O. Flannery and his wife, appellant Carol Flannery (hereafter "appellant"), "executed The Flannery Family Revocable Trust" (hereafter "the Trust"). (Mag.'s Decision at 2.)

{¶ 3} The Trust "creates a surviving spouse trust on the death of one spouse." (Mag.'s Decision at 2.) Specifically, Section 2 of the Trust states in part: "Upon the death of the first of us to die, all the assets then in the trust estate * * * shall be retained in the Surviving Spouse's Trust for the benefit of the survivor of us, all as hereinafter provided." (The Trust at 2.) Section 3 of the Trust addresses the surviving spouse's trust, while Section 4 addresses assets to be held in trust "for the benefit of any descendent of Tim." (The Trust at 3.)

{¶ 4} Section 5A of the Trust sets forth "Standards Governing Discretionary Distributions by Trustee," and states in part:

> The trustee may make such discretionary distributions at such times and in such amounts as in the discretion of the Trustee shall be necessary or appropriate for the health, support, education, maintenance, and comfort of such persons at their accustomed standard of living. Our intention is that such distributions shall not be limited to supplying necessities for such persons, but shall maintain them liberally according to their accustomed standard of living, account being taken of their possible desire for travel, owning a home and all other reasonable desires not clearly inconstant with their accustomed standard of living. * * * However, the Trustee, based upon information reasonably available to the Trustee, shall make such distributions to any such person for the purposes set forth above only to the extent such person's income, and funds available from others obligated to supply funds for such purposes, are insufficient in the Trustee's opinion for such purposes.

(The Trust at 4-5.)

{¶ 5} The Trust "establishes that upon the death of the survivor of Carol Flannery and Timothy O. Flannery, the assets remaining in the Surviving Spouse's Trust 'shall be allocated per stirpes' among Timothy O. Flannery's descendants who are then living," and "[t]hose assets shall be retained in trust for the benefit of the living descendants of Timothy O. Flannery." (Mag.'s Decision at 3.) Further, the Trust "provides that all assets held in trust for the primary benefit of any one person shall constitute a separate trust and that all the assets shall be administered and accounted for in a separate trust." (Mag.'s Decision at 3.)

{¶ 6} The Trust "mandates that the trustee shall keep full books of account showing the condition of each trust, which shall be open at all reasonable times to the inspection of the respective beneficiaries of the trust." (Mag.'s Decision at 3.)

{¶ 7} Section 10 of the Trust states in part: "During our joint lifetimes, we, and during Tim's lifetime, Tim, may amend or revoke this trust instrument, by written instrument delivered to the Trustee. Upon the death of Tim, this trust shall become irrevocable, and may not be amended or modified." (The Trust at 10.)

{¶ 8} During their joint lifetimes, Timothy and appellant "were co-trustees of the trust." (Mag.'s Decision at 4.) On September 20, 2020, Timothy died, and "Carol Flannery became the sole trustee" and the "sole beneficiary of the trust." (Mag.'s Decision at 4.) Upon the death of appellant, "the trust beneficiaries are the surviving descendants of Timothy O. Flannery" and, "[c]urrently, those descendants are [appellees] Christina Collins and Heather MacLean." (Mag.'s Decision at 4.)

{¶ 9} On October 7, 2020, appellees filed a complaint in the probate court against appellant. The complaint alleged that appellees "are the daughters, and only children of Timothy O. Flannery * * * who died on September 20, 2020, and are beneficiaries of The Flannery Family Revocable Trust dated March 3, 2015." (Compl. at 2.) According to the complaint, Timothy and appellant "were the settlors and co-trustees of the Trust, and the Trust became irrevocable as the result of Mr. Flannery's death." (Compl. at 3.) It was alleged "Mr. Flannery and [appellant] were married on July 27, 1990 but were parties to a pending divorce action * * * and lived separately at the time of Mr. Flannery's death." (Compl. at 3.) The divorce "was never finalized as the result of Mr. Flannery's unexpected death." (Compl. at 3.)

{¶ 10} Appellees' complaint sought "an accounting of the trust's assets," an accounting of appellant's "income and assets exclusive of the trust," and an injunction against appellant "from taking any more assets from the trust." (Mag.'s Decision at 4-5.) The complaint also requested, pursuant to R.C. 2109.24, 5810.01 and 5807.06, that appellant "be removed as Trustee for unfitness, incompetency, conflict of interest and failure to effectively administer the Trust assets." (Compl. at 6.)

{¶ 11} On August 25, 2022, appellees filed a motion for summary judgment. On August 29, 2022, appellant "filed a competing motion for summary judgment" which was "incorrectly captioned as a plaintiff's motion." (Mag.'s Decision at 7.) Appellant subsequently filed "an amended motion for summary judgment in order to specify that it was from Carol Flannery in her capacity as defendant." (Mag.'s Decision at 7.) Appellees sought summary judgment "on their complaint," while appellant sought summary judgment "on grounds that Christina Collins and Heather MacLean lack standing to bring their complaint and on grounds that their claims lack merit." (Mag.'s Decision at 8.)

{¶ 12} In considering the competing motions, the magistrate determined that appellees, as contingent beneficiaries of the Trust, were "entitled to a trust accounting under R.C. 5808.13(C)" and therefore had "standing to bring their complaint for a trust accounting." (Mag.'s Decision at 10.) Accordingly, the magistrate concluded appellees were "entitled to summary judgment on their claim for an accounting of the trust assets." (Mag.'s Decision at 11.) The magistrate further found, however, appellees were not entitled to summary judgment against appellant "on their claim for an accounting of [appellant's] income and assets exclusive of the trust." (Mag.'s Decision at 11.)

{¶ 13} The magistrate next addressed appellees' claim for removal of appellant as trustee, and the issue of whether appellees had standing to request her removal. While the magistrate found appellees had standing to seek appellant's removal, the magistrate ultimately concluded appellees "have not met their burden to establish, by clear and convincing evidence, that they should be granted summary judgment on the issue of this Court taking the drastic measure of removing [appellant] as trustee." (Mag.'s Decision at 19.) Finally, the magistrate found appellees were not entitled to injunctive relief or an award of attorney fees.

{¶ 14} On August 11, 2023, appellant filed objections to the magistrate's decision. Specifically, appellant argued the magistrate erred in holding appellees had standing to

lodge their claims, asserting "their contingent interests are subject to complete defeasance." (Appellant's Obj.'s at 1.) Appellant further argued the magistrate erred in ordering an accounting of the surviving spouse's trust.

{¶ 15} By judgment entry filed August 22, 2023, the probate court overruled appellant's objections and adopted the magistrate's decision. The court held in part that appellees "have standing to lodge their claims," and there was "no language in the Trust that ameliorates or modifies the duty of the Trustee to provide trust accountings as required by R.C. Sec. 5808.13." (Decision at 2.)

## II. Assignments of Error

{¶ 16} Appellant appeals and assign the following two assignments of error for our review:

> I. THE PROBATE COURT ERRED AS A MATTER OF LAW BY PARTLY DENYING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT CAROL FLANNERY BECAUSE THE PLAINTIFFS LACK STANDING TO INITIATE LITIGATION AS TO THE FLANNERY FAMILY REVOCABLE TRUST DATED MARCH 3, 2015.
>
> II. THE PROBATE COURT ERRED AS A MATTER OF LAW BY PARTLY DENYING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT CAROL FLANNERY BECAUSE THE PLAINTIFFS ARE NOT ENTITLED TO AN ACCOUNTING OF THE SURVIVING SPOUSE'S TRUST HELD UNDER THE TERMS OF THE FLANNERY FAMILY REVOCABLE TRUST DATED MARCH 3, 2015.

## III. Analysis

{¶ 17} Under the first assignment of error, appellant argues the probate court erred in partly denying summary judgment in her favor, asserting appellees lack standing to initiate litigation against the Trust. Appellant contends appellees lack standing because they are not beneficiaries of a currently funded trust interest; further, appellant maintains, because appellees' interests are completely defeasible if the property held in the surviving spouse's trust is consumed for appellant's benefit before she passes away, "they lacked standing to sue her at all." (Appellant's Brief at 15.)

{¶ 18} Pursuant to Civ.R. 56(C), summary judgment shall be granted if the filings in the action, including pleadings and affidavits, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." This

court's review of a trial court's decision granting summary judgment "is de novo." *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

{¶ 19} The doctrine of "[s]tanding determines ' "whether a litigant is entitled to have a court determine the merits of the issues presented." ' " *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, ¶ 20, quoting *State ex rel. Teamsters Local Union No. 436 v. Cuyahoga Cty. Bd. of Commrs.*, 132 Ohio St.3d 47, 2012-Ohio-1861, ¶ 10, quoting *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320 (1994). The issue as to "[w]hether a party has established standing to bring an action before the court is a question of law, which we review de novo." *Id.*, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, ¶ 23.

{¶ 20} In general, " '[a]t a minimum, common-law standing requires the litigant to demonstrate that he or she has suffered (1) an injury (2) that is fairly traceable to the defendant's allegedly unlawful conduct and (3) is likely to be redressed by the requested relief.' " *Pond v. Conkle*, 10th Dist. No. 22AP-770, 2023-Ohio-3438, ¶ 10, quoting *Ohioans for Concealed Carry, Inc. v. Columbus*, 164 Ohio St.3d 291, 2020-Ohio-6724, ¶ 12, citing *Moore* at ¶ 22. Under Ohio law, "[i]n addition to standing authorized by common law, standing may also be conferred by statute." *ProgressOhio.org, Inc. v. JobsOhio*, 139 Ohio St.3d 520, 2014-Ohio-2382, ¶ 17.

{¶ 21} In her motion for summary judgment, appellant, in asserting appellees lacked standing to bring their claims, relied primarily on a decision of the Eighth District Court of Appeals, *Campbell v. Donald A. Campbell 2001 Trust*, 8th Dist. No. 109585, 2021-Ohio-1731. On appeal, appellant similarly relies predominantly on *Campbell* in arguing the probate court erred in finding appellees had standing to seek her removal as trustee. We therefore begin with a discussion of that decision.

{¶ 22} Under the facts of *Campbell*, a husband and wife, Donald and Margaret Campbell, "each created various trusts" during their lifetime, including the "Donald A. Campbell 2001 Trust," the "Campbell Family 2001 Descendants Trust," the "F. Margaret Campbell 2011 Trust," and the "F. Margaret Campbell Family Trust." *Id.* at ¶ 2. Donald passed away in 2010, and Margaret became the "successor-trustee and sole beneficiary of the Donald Trust until her death in 2015." *Id.* at ¶ 4. The terms of "[t]he Donald Trust documents provided for discretionary distribution of principal by the trustee to Margaret for her support, health, education, and best interests," and "Margaret had exclusive

discretion whether to make principal distributions consistent with the terms of the trust." *Id.* at ¶ 5. Further, "Margaret was also the sole trustee and primary beneficiary of the Margaret Trust, which also permitted discretionary distribution of principal by the trustee to Margaret for her support, health, education, and best interests." *Id.*

{¶ 23} The plaintiff in *Campbell*, Allen Campbell, the son of Donald and Margaret Campbell, brought an action as beneficiary of the Margaret Trust, seeking reimbursement from the Donald Trust for payments by Margaret, made between 2010 and until her death in 2015, with respect to life insurance proceeds and other transfers. The probate court found the plaintiff lacked standing to pursue any of the claims in his complaint.

{¶ 24} On appeal, the Eighth District Court of Appeals analyzed the issue of standing in the context of "traditional" common law "principles of standing that 'require litigants to show, at a minimum, that they have suffered "(1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief." ' " *Id.* at ¶ 28, quoting *ProgressOhio.org.* at ¶ 7. The court concluded the plaintiff could not "maintain causes of action based on any events that occurred prior to Margaret's death because he is unable to satisfy the injury requirement for common law standing." *Id.* at ¶ 41.

{¶ 25} In reaching that determination, the court noted that, under the terms of the trusts at issue, Margaret "was to receive any and all net income from the trusts, and she had sole discretion to distribute any and all principal to herself for her support, her health, her education, and her best interests." *Id.* at ¶ 39. The court relied on Ohio case law for the proposition that " '[i]n situations where a trust beneficiary's interest does not vest until the settlor's death, because it is subject to defeasance prior to death * * *, courts have held that the beneficiary cannot maintain a cause of action based on events that occurred prior to the settlor's death.' " *Id.* at ¶ 41, quoting *Cartwright v. Batner*, 2d Dist. No. 25938, 2014-Ohio-2995, ¶ 57. Applying that case law to the facts, the court found the plaintiff "had no beneficial interest in any assets from the Margaret Trust until Margaret's death in 2015," and there was "nothing stopping Margaret from completely depleting the Margaret Trust before her death, leaving [plaintiff] and the other beneficiaries with a vested interest in nothing * * * because [plaintiff's] interest was not vested and was subject to defeasance prior to her death." *Id.*

{¶ 26} In the present case, the magistrate addressed the decision in *Campbell* and found it not controlling on the issue of standing. Specifically, the magistrate observed, whereas the trust in *Campbell* "was subject to unfettered depletion by the initial trustee and beneficiary," appellant's authority to make distributions under the terms of the trust in the instant case was "not unfettered" and without limitation. (Mag.'s Decision at 13.) Rather, the magistrate observed, "pursuant to the Discretionary Standards Section of the trust, Carol Flannery is entitled to make distributions to herself, as trustee and beneficiary, 'only to the extent [her] income, and funds available from others obligated to supply funds for such purposes, are insufficient in the Trustee's opinion for such purposes." (Mag.'s Decision at 13-14.) The magistrate found "[t]his qualification places guardrails on the trust distributions to the benefit of future beneficiaries." (Mag.'s Decision at 14.) Thus, the magistrate concluded, "in the final analysis, Carol Flannery is subject to parameters that, if triggered, prevent her from completely depleting the assets in the trust to the detriment of future and contingent beneficiaries." (Mag.'s Decision at 14.)

{¶ 27} Upon review, we similarly conclude the decision in *Campbell* is not dispositive as to the issue of standing in this case. At the outset (and as found by the probate court), in contrast to the "sole discretion" accorded the trustee in *Campbell* to "distribute any and all principal to herself" (*Campbell* at ¶ 39), the language of the trust instrument in this case requires the trustee to consider "funds available from others obligated to supply funds," and to make distributions "only to the extent such person's income," and funds available from others so obligated to provide, "are insufficient" for those purposes. (The Trust at 5.) We therefore agree with the magistrate that this qualification placed "guardrails," i.e., a standard, on the trust distributions that limited the trustee's discretion to deplete the trust "to the detriment of future and contingent beneficiaries." (Mag.'s Decision at 14.)

{¶ 28} We note, although not entirely clear from a reading of *Campbell*, the decision in that case suggests the settlor, Margaret, retained the power to amend her trust during her lifetime. *See Campbell* at ¶ 6 (noting that "[a]fter her husband's death in 2010 * * * she amended and restated her trust" in 2011, making changes in which she "named [Allen] Campbell executor of her estate * * * and a beneficiary"). To the extent Margaret may have retained such power over the trust during her lifetime, any rights or interests of beneficiaries would have been subject to complete defeasance if she chose to amend (or

revoke) the trust prior to her death. *See, e.g., Lewis v. Star Bank, N.A.*, 90 Ohio App.3d 709 (12th Dist.1993) (as long as settlor of revocable trust retained the right to change beneficiaries, modify trust, or revoke it completely, beneficiary children "had no absolute entitlement to anything" as their interests "were subject to complete divestment" while settlor was still alive).

{¶ 29} In the present case, following the death of Timothy, appellant retained no such right to divest a beneficiary of an interest through amendment or revocation of the trust. Specifically, as noted above, Section 10 of the Trust states in part: "During our joint lifetimes, we, and during Tim's lifetime, Tim, may amend or revoke this trust instrument, by written instrument delivered to the Trustee. Upon the death of Tim, this trust shall become irrevocable, and may not be amended or modified." (The Trust at 10.) Thus, while Timothy was alive, the trust was revocable and subject to amendment, i.e., the settlors could change beneficiaries. Similarly, if Timothy had survived appellant, he would have retained the power to revoke or amend the trust.[1] However, upon his death, the trust became irrevocable and appellant, having survived her husband, could not amend, revoke, or change the trust with respect to the rights of the beneficiaries.

{¶ 30} We further note the plaintiff in *Campbell* did not seek to establish standing under a statutory provision, and therefore the court in that case relied on "traditional principles of standing" in determining that the plaintiff was "unable to satisfy the injury requirement for common law standing." *Campbell* at ¶ 28, 41. The court in *Campbell* recognized, however, in addition to the traditional principles of standing, "the * * * other way" under Ohio law "to have standing to sue is pursuant to an explicit statute or what is described as 'statutory standing.' " *Id.* at ¶ 42, quoting *Wooster v. Enviro-Tank Clean, Inc.*, 9th Dist. No. 13CA0012, 2015-Ohio-1876, ¶ 12.

{¶ 31} In contrast to the facts of *Campbell*, the plaintiffs in the present case (i.e., appellees) sought removal of the trustee pursuant to statutory provisions. Specifically, as noted by the magistrate, appellees sought to remove appellant as trustee "pursuant to R.C. 2109.24, 5807.06, and 5810.01." (Mag.'s Decision at 14.) While the magistrate ultimately

---

[1] We note the Ohio Trust Code recognizes that "[d]uring the lifetime of the settlor of a revocable trust * * * the rights of the beneficiaries are subject to the control of the settlor, and the duties of the trustee, including the duties to inform and report under section 5808.13 of the Revised Code, are owed exclusively to the settlor." R.C. 5806.03(A).

determined appellees had not carried their burden, by clear and convincing evidence, to show the probate court should take "the drastic measure of removing Carol Flannery as trustee," the magistrate found the statutes relied on by appellees provided them "authority to seek Carol Flannery's removal," and that the statutes also "give this Court authority to do so if warranted." (Mag.'s Decision at 14, 19.)

{¶ 32} We therefore turn to a consideration of Ohio's statutory provisions, including the Ohio Trust Code (hereafter "OTC"), as relevant to the issue of standing. In general, the OTC, "effective January 1, 2007," and "found in R.C. Chapters 5801 through 5811, is Ohio's adaptation of the Uniform Trust Code, promulgated in 2000." *Dueck v. Clifton Club Co.*, 8th Dist. No. 103868, 2017-Ohio-7161, ¶ 43.

{¶ 33} Under R.C. 5808.02, "a trustee has a fiduciary duty to a trust beneficiary." *Id.* at ¶ 69. R.C. Chapter 5808 "specifies the duties" a trustee owes to beneficiaries, including "the duty to 'administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with Chapters 5801. to 5811. of the Revised Code,' * * * the duty to 'take reasonable steps to take control of and protect the trust property,' and the 'duty to keep the beneficiaries reasonably informed of the administration of the trust.' " (Citations omitted.) *Bryan v. Chytil*, 4th Dist. No. 20CA3723, 2021-Ohio-4082, ¶ 91.

{¶ 34} As indicated, appellees sought removal of the trustee under the provisions of R.C. 5810.01 and 5807.06. R.C. 5810.01(B)(7) provides in part: "To remedy a breach of trust [by a trustee] that has occurred or may occur, the court may * * * [r]emove the trustee as provided in section 5807.06 of the Revised Code." R.C. 5807.06 states in part as follows:

> (A) The settlor, a cotrustee, or a beneficiary may request the court to remove a trustee, or the court may remove a trustee on its own initiative.
>
> (B) The court may remove a trustee for any of the following reasons:
>
> (1) The trustee has committed a serious breach of trust;
>
> (2) Lack of cooperation among cotrustees substantially impairs the administration of the trust;
>
> (3) Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court

determines that removal of the trustee best serves the interests of the beneficiaries.

{¶ 35} Thus, in accordance with R.C. 5807.06(A), the "settler, a cotrustee, or a beneficiary may request the court to remove a trustee, or the court may remove a trustee on its own initiative." Under R.C. 5801.01(C), a "[b]eneficiary" is defined as "a person that has a present or future beneficial interest in a trust, whether vested or contingent."

{¶ 36} As set forth under the facts, Section 3 of the Trust states in part: "Upon the death of the survivor of us, the assets remaining in the Surviving Spouse's Trust shall be allocated per stirpes among Tim's descendants who are then living. Said assets, as so allocated, shall be retained by the Trustee * * * in trust for the benefit of such person." (The Trust at 2-3.) The magistrate, noting that "[c]urrently, those descendants are Christina Collins and Heather MacLean," found appellees "are contingent beneficiaries of the trust." (Mag.'s Decision at 4, 10.) The magistrate concluded that the applicable statutory provisions gave appellees "authority to seek [appellant's] removal, and the statutes give this Court authority to do so if warranted." (Mag.'s Decision at 14.) In addressing appellant's objections to the magistrate's decision, the probate court, finding that appellees were beneficiaries as defined under R.C. 5801.01(C), similarly concluded appellees "have standing to lodge their claims." (Decision at 2.)

{¶ 37} We find no error with that determination. Again, R.C. 5801.01(C) defines a beneficiary to include a "person that has a present or future beneficial interest in a trust, whether vested or contingent," while R.C. 5807.06(A) provides that "a beneficiary may request the court to remove a trustee." Here, because appellees, at the least, had a contingent future beneficial interest in the Trust (a trust which, by its own terms, became irrevocable upon the death of Timothy), we conclude the probate court did not err as a matter of law in holding appellees had standing to seek removal of the trustee under the statutory provisions of the OTC. Accordingly, the probate court did not err in partly denying appellant's motion for summary judgment as to the issue of appellees' standing.

{¶ 38} Appellant's first assignment of error is not well-taken and is overruled.

{¶ 39} Under the second assignment of error, appellant contends the probate court erred in partly denying summary judgment in her favor as to the issue whether appellees are entitled to a trust accounting. Appellant argues the probate court erred in finding appellees are entitled to an accounting under R.C. 5808.13(C) because, according to

appellant, appellees are neither "current beneficiaries" nor "other beneficiaries" of the surviving spouse's trust.

{¶ 40} R.C. 5808.13(C) states in part: "A trustee of a trust * * * shall send to the current beneficiaries, and to other beneficiaries who request it, at least annually, * * * a report of the trust property." As previously noted, a "[b]eneficiary" is defined under R.C. 5801.01(C) to mean "a person that has a present or future beneficial interest in a trust, whether vested or contingent." Pursuant to R.C. 5801.01(F), a "[c]urrent beneficiary" is defined to mean "a beneficiary that, on the date the beneficiary's qualification is determined, is a distribute or permissible distribute of trust income or principal."

{¶ 41} In addressing the issue of whether appellees were entitled to an accounting, the magistrate held that, while appellees "are not current beneficiaries of the trust, they are contingent beneficiaries of the trust." (Mag.'s Decision at 10.) More specifically, upon the death of appellant, "assets in her trust will be given, in trust, to Christina Collins and Heather MacLean if they survive her" and, "[a]s such, they are beneficiaries" as defined under R.C. 5801.01. (Mag.'s Decision at 10.) The magistrate therefore concluded that appellees, as beneficiaries, "are entitled to a trust accounting under R.C. 5808.13(C)." (Mag.'s Decision at 10.) In overruling appellant's objections to the magistrate's decision, the probate court found appellees "are statutorily entitled to receive accountings at least annually." (Decision at 3.)

{¶ 42} In her objections to the magistrate's decision, appellant argued (as she does on appeal) that appellees are not entitled to a report under R.C. 5808.13(C) because they are not beneficiaries of the spousal trust, but rather beneficiaries of separate unfunded trusts. More specifically, appellant argues the statutory provisions of the OTC are not applicable in this case because, "[u]nder the Trust executed by Carol and Tim, * * * the residuary interest is owned by the trustee of the Surviving Spouse's Trust, and it is retained in a totally new fund defined under the terms that create the Descendants' Trusts." (Appellant's Brief at 33.)

{¶ 43} While no Ohio cases appear to have addressed application of the OTC with respect to persons holding a future beneficial interest in an unfunded trust, we note at least one court in another jurisdiction has considered a similar argument. Under the facts in *Rachins v. Minassian*, 251 So.3d 919, 920 (Fla.App.2018), a husband "created a revocable trust * * * which would become irrevocable upon his death," and the husband and wife

"were the sole trustees of the original trust." The husband died in 2010 and, because the wife survived the husband, the trust property was distributed to a family trust. The trust document "empowered the wife, as trustee, to distribute income and principal of the Family Trust to herself, in her sole and absolute discretion, for her 'health, education, and maintenance.' " *Id.* Further, "[u]pon the death of the wife, the Family Trust would terminate, and the remainder of the Family Trust would be divided into a separate trust share for each of the children." *Id.* Following the husband's death, the children filed a complaint against the wife, alleging she was improperly administering the family trust. The wife filed a motion to dismiss the children's complaint, arguing they were not beneficiaries of the family trust.

{¶ 44} The trial court found the children lacked standing to bring any of the claims. On appeal, the Florida appellate court reversed. In its decision, the court interpreted various sections of Florida's Trust Code, which contain several provisions similar to Ohio's version, including the Florida Trust Code's definition of "a 'beneficiary' as 'a person who has a present or *future* beneficial interest in a trust, vested or *contingent*.' " (Emphasis sic.) *Id.* at 923. In addressing the wife's argument that the children were not beneficiaries of the family trust, the court held in part: "The children are beneficiaries because they have a future beneficial interest in the Family Trust. More specifically, the children have a future beneficial interest in any property remaining in the Family Trust after the wife's death, since any remaining property remaining in the Family Trust will be disbursed to a new trust for the children's benefit under the terms of the original trust document." *Id.* at 924.

{¶ 45} The court found "[t]he fact that any remaining principal of the Family Trust would flow into a new trust created for the children, as opposed to being distributed to the children outright, does not preclude the children from being beneficiaries of the Family Trust under the statutory definition." *Id.* The court further held: "[T]he fact that the Family Trust terminates upon the wife's death does not preclude the children from having a beneficial interest in the Family Trust. Indeed, by definition, a remainder interest in a trust refers to the right to receive trust property upon the termination of the trust." *Id.* at 924-25, citing Restatement of Trusts 3d, Section 89 (2007).

{¶ 46} Although not binding on this court, we find the reasoning in *Rachins* persuasive. In the present case, the probate court essentially applied similar reasoning in holding that appellees, each having a residual or remainder interest in the surviving

spouse's trust "which pours over into other trusts that are held for Mr. Flannery's descendants," are beneficiaries and therefore "statutorily entitled" to at least annual reports. (Decision at 2-3.) We find no error with that determination.

{¶ 47} Here, the magistrate properly noted appellees are not "[c]urrent beneficiar[ies]" of the Trust as defined by R.C. 5801.01(F). However, as also recognized by the magistrate, R.C. 5808.13(C) requires a trustee to send a report "to other beneficiaries who request it" (i.e., whether a current beneficiary or not). As previously addressed, appellees are "[b]eneficiaries" of the Trust as defined by R.C. 5801.01(C) ("a person that has a present or future beneficial interest in a trust, whether vested or contingent"). Accordingly, and as found by the probate court, as beneficiaries of the Trust, appellees are entitled to "a report of the trust property, liabilities, receipts, and disbursements." R.C. 5808.13(C). The probate court therefore did not err, as a matter of law, in partly denying appellant's motion for summary judgment as to the issue of an accounting.

{¶ 48} Appellant's second assignment of error is without merit and is overruled.

### IV. Conclusion

{¶ 49} Based on the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Probate Division, is hereby affirmed.

*Judgment affirmed.*

DORRIAN, J, concurs.
EDELSTEIN, J., concurs in judgment only.

EDELSTEIN, J., concurs in judgment only.

{¶ 50} I concur with the majority's conclusion that appellees had standing to file their action in the probate court. I write separately, however, because I reach this conclusion for reasons different than those stated by the majority decision.

{¶ 51} Initially, I disagree with the majority's conclusion that the trust placed guardrails on appellant's ability to deplete the trust. Appellant is currently the sole trustee and sole beneficiary of the Surviving Spouse's Trust. The trust permits appellant to make discretionary distributions to "maintain [herself] liberally" so she may "enjoy the luxuries in life," and directs her to make such distributions "only to the extent" her "income, and funds available from others obligated to supply funds for such purposes, are insufficient in the Trustee's opinion for such purposes." (Trust at 5-6.) Currently, the "Trustee's opinion"

is solely the opinion of appellant. (Trust at 5.) Accordingly, so long as appellant remains the sole trustee and sole beneficiary of the trust, she has complete discretion regarding distributions and the trust effectively imposes no limit on her ability to deplete the trust.

{¶ 52} Nevertheless, I am compelled to find appellees possessed standing to maintain their action in the probate court based on the Supreme Court of Ohio's holding in *Papiernik v. Papiernik*, 45 Ohio St.3d 337 (1989). In *Papiernik,* the settlor ("husband") created an inter vivos trust which, upon his death, required the trustee to "establish two separate trust estates to be designated as 'Trust A' and 'Trust B.' " *Id.* at 338. Trust A was established for the benefit of husband's surviving spouse ("wife") and would be funded with the assets from husband's estate. Wife held an "unlimited testamentary power of appointment" with respect to the assets of Trust A, but if wife failed to exercise her testamentary power of appointment, the assets remaining in Trust A on her death "would be transferred over to and become a part of Trust B." *Id.* at 339. The trust agreement also designated wife as a trust advisor to the trustee. Trust B was established for the benefit of husband's three sons and "was to be funded with any remaining assets available in the trust estate after the funding of Trust A." *Id.* at 338. The court recognized the sons were "not beneficiaries of Trust A," but concluded that the sons had standing to maintain an action seeking to modify the trust and remove wife as trust advisor following husband's death. *Id.* at 339.

{¶ 53} The *Papiernik* court determined that because the trust instrument "grant[ed] an unlimited testamentary power of appointment to the surviving spouse with the remainder over to the children," the trust created in the "remainderman a vested interest subject to defeasance by the exercise of the [wife's] power of appointment." *Id.* at paragraph one of the syllabus, following *First Natl. Bank of Cincinnati v. Tenney*, 165 Ohio St. 513 (1956). Thus, the court identified the sons' interests "in the assets of Trust A [as being] a vested remainder subject to defeasance." *See Id.* at 342-43, quoting 2 Restatement of the Law, *Property, Future Interests*, Section 157, 554-55, 561 (1936), Comment *p* and *u* (explaining where a remainder is subject to a condition precedent, " 'it is not possible to point to any person and to say such person would take,' " but where a remainder is vested subject to complete defeasance, " 'it is possible to point to a person and to say that such person would take' " although the " 'person thus clearly identified has no certainty of retaining such present interest' "). The *Papiernik* court held that a "remainderman holding

a vested interest in a trust which is subject to defeasance by the exercise of a testamentary power of appointment has standing to maintain an action to modify the administrative provisions of the trust agreement." *Id*. at paragraph two of the syllabus.

**{¶ 54}** Although Trust A in *Papiernik* was subject to defeasance by the wife's testamentary power of appointment, and here the Surviving Spouse's Trust is subject to defeasance by appellant's unfettered ability to deplete the trust assets, the result under either scenario is the same. Tim retained the authority to amend or revoke the trust during his lifetime, but the trust became irrevocable following his death. As such, appellees' interests in the trust are now firmly established and vested. *See Peleg v. Spitz*, 8th Dist. No. 89048, 2007-Ohio-6304, ¶ 20 (noting that in contrast to *Papiernik*, where the sons' interests "were vested" following the husband's death, the *Peleg* appellant's status as a beneficiary was not "firmly established" during the settlor's life because the settlor "reserved the right to change beneficiaries" during her lifetime); *Campbell v. Donald A. Campbell 2001 Trust*, 8th Dist. No. 109585, 2021-Ohio-1731, ¶ 41 (acknowledging the son's interest in the Margaret Trust "was not vested" prior to Margaret's death).

**{¶ 55}** In the present case, appellees hold a vested remainder interest in the Surviving Spouse's Trust subject to complete defeasance. Therefore, pursuant to the Supreme Court's holding in *Papiernik*, although they may not ultimately receive any assets following appellant's death, appellees had standing to maintain their action against her in the probate court.